

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1250-12

**MARK ALEXANDER FLEMING, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### DENTON COUNTY

KELLER, P.J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined.

I would hold that, after *Lawrence v. Texas*,[1] in a limited number of child sex cases, due process requires the submission of an affirmative defense of reasonable mistake of age. I would also hold that such a defense is not automatically precluded by the fact that the complainant is under the age of fourteen.

## I. SUBSTANTIVE DUE PROCESS

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty,

---

[1] 539 U.S. 558 (2003).

or property, without due process of law."[2]  The Supreme Court has interpreted the Due Process Clause as having both substantive and procedural components.[3]  The substantive component protects the individual against government action that either lacks a rational basis or unduly infringes on a fundamental right or liberty interest.[4]  A statute that infringes upon a fundamental right or liberty interest violates the substantive component of the Due Process Clause "unless the infringement is narrowly tailored to serve a compelling state interest."[5]  A substantive-due-process analysis that is based upon the infringement of a fundamental right or liberty interest must provide a "careful description of the asserted fundamental liberty interest."[6]  A fundamental right or liberty interest is one that is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed."[7]  In addition to specific freedoms protected by the Bill of Rights,[8] the Supreme Court has recognized a number of fundamental rights, such as the right to marry, the right to have children, the right to marital privacy, and the right to bodily integrity.[9]

## II. FUNDAMENTAL RIGHT

---

[2] U.S. CONST., Amend. 14, § 1, cl. 3.

[3]  *Reno v. Flores*, 507 U.S. 292, 301-02, 306-07 (1993).

[4]  *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 728 (1997).

[5]  *Id.* at 721; *Flores*, 507 U.S. at 302.

[6]  *Glucksberg*, 521 U.S. at 721 (internal quotation marks omitted).

[7]  *Id.* at 720-21 (citations and internal quotation marks omitted, bracketed material substituted for original).

[8]  The first ten amendments to the United States Constitution.

[9]  *Glucksberg*, 521 U.S. at 720 (citing cases).

## A. Overview

As will be seen in the following discussion, one of the two fundamental rights implicated in the present case is the right to be free from harsh punishment when mental culpability is entirely absent. In this context, mental culpability is entirely absent if the defendant (1) harbors no culpable mental state with respect to an element of the offense that is crucial to imposing criminal liability *and* (2) harbors no culpable mental state with respect to the existence of facts that place him on notice of the probability of strict regulation requiring him to ascertain whether he is engaging in conduct that violates the law. For purposes of this discussion, culpable mental states include not only the ones listed in the Penal Code—intent, knowledge, recklessness, and criminal negligence[10]—but other culpable mental states such as wilfulness and ordinary negligence.[11]

## B. Fundamental Nature of Mental Culpability

The idea that some mental culpability must attach to conduct before it can be a crime "is no provincial or transient notion."[12] "It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."[13] The Supreme Court has explained that a relation "between some mental element and punishment . . . is almost as instinctive as the child's familiar exculpatory" statement

---

[10] *See* TEX. PENAL CODE § 6.03.

[11] *See State v. Hazelwood*, 946 P.2d 875 (Alaska 1997) (discussing ordinary negligence as a minimum mental-culpability standard sometimes required by due process).

[12] *Morissette v. United States*, 342 U.S. 246, 250 (1952).

[13] *Id.*

"But I didn't mean to."[14] The general requirement of some *mens rea* for a crime is firmly embedded in the common law and is "the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."[15] There are exceptions to the general requirement of *mens rea*: offenses that are sometimes called "strict-liability crimes."[16] But, as the following discussion will show, two characteristics generally associated with such offenses mitigate against their harshness: (1) they typically have light penalties, and (2) despite their name, they typically do not entirely dispense with mental culpability.

### C. Doctrine of Strict Liability

Historically, strict-liability offenses have most often been what courts have called "regulatory" or "public welfare" offenses.[17] Typically, these offenses carried "only light penalties" such as "fines or short jail sentences,"[18] and conviction of the offense did "no grave damage to an offender's reputation."[19] In a system like ours that generally requires a "vicious will" to establish a crime, "imposing severe punishments for offenses that require no *mens rea* would seem incongruous."[20] The Supreme Court has recognized that the "public welfare offense" label "hardly

---

[14]  *Id.* at 250-51.

[15]  *Staples v. United States*, 511 U.S. 600, 605 (1994) (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 436 (1978)); *see also Smith v. California*, 361 U.S. 147, 150 (1959).

[16]  *Staples*, 511 U.S. at 607 n.3.

[17]  *Id.* at 616-17; *United States v. Freed*, 401 U.S. 601 (1971).

[18]  *Staples*, 511 U.S. at 616.

[19]  *Id.* at 617-18; *Morissette*, 342 U.S. at 256.

[20]  *Staples*, 511 U.S. at 616-17.

seems apt" when the crime is a felony.[21]

Whether or not it is a public-welfare offense, it is generally true that a so-called strict-liability offense does not entirely dispense with mental culpability. From a Texas perspective, the Supreme Court's cases generate some confusion because they often define *mens rea* narrowly to encompass only an actual awareness of the circumstances that make the act criminal.[22] The Supreme Court has referred to *mens rea* as a "vicious will,"[23] and that Court has suggested that crimes of negligence or omission of duty are instances in which a "vicious will" are absent.[24] In Texas, however, "criminal negligence" is a statutorily recognized culpable mental state,[25] and we commonly refer to negligence as a form of *mens rea*.[26]

Regardless of the status of negligence as a *mens rea*, the Supreme Court has indicated that strict-liability offenses generally impose liability only if the defendant is aware of certain facts that

---

[21] *Id.* at 618.

[22] *Id.* at 607 n.3 ("Under such statutes we have not required that the defendant know the facts that make his conduct fit the definition of the offense. Generally speaking, such knowledge is necessary to establish *mens rea*.").

[23] *Id.* at 616-17; *Freed*, 401 U.S. at 607; *Morissette*, 342 U.S. at 251.

[24] *Staples*, 511 U.S. at 606-07 (discussing legislation that "dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing"); *Morissette*, 342 U.S. at 251 n.8 ("Most extensive inroads upon the requirement of intention, however, are offenses of negligence, such as involuntary manslaughter or criminal negligence and the whole range of crimes arising from omission of duty."); *United States v. Balint*, 258 U.S. 250, 252 (1922) (ignorance or good faith not a defense to certain regulatory crimes).

[25] TEX. PENAL CODE § 6.03(d).

[26] *See*, *e.g.*, *Montgomery v. State*, 369 S.W.3d 188, 191 (Tex. Crim. App. 2012); *Watson v. State*, 369 S.W.3d 865, 871 (Tex. Crim. App. 2012); *Williams v. State*, 235 S.W.3d 742, 751-53 (Tex. Crim. App. 2007). *See also Hazelwood*, 946 P.2d at 878-79 (characterizing ordinary negligence as a *mens rea*).

place him on notice of "the probability of strict regulation" requiring him to "ascertain at his peril whether his conduct comes within the inhibition" of the law.[27] If, for example, a person is in the business of selling drugs or food,[28] or he deals in hazardous materials such as explosives or sulfuric acid,[29] then he is on notice that the burden may be on him to ascertain that he is complying with all government laws relating to the matter. Essentially, the same reasoning holds in the area of compound crimes and transferred intent, where a person who commits a predicate crime is held responsible for an unintended consequence of that crime, as in the case of felony murder:

> It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their unlawful acts . . . . The felony-murder rule is a familiar example: If a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder.[30]

Commission of the predicate crime is the dangerous activity that places the defendant on notice that

---

[27] *Staples*, 511 U.S. at 607. *See also United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 564-65 (1971) (with respect to transporting sulfuric acid, "[T]he probability of regulation is so great that anyone who is aware that he is in possession . . . must be presumed to be aware of the regulation."); *Freed*, 401 U.S. at 609 ("This is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that the possession of hand grenades is not an innocent act."); *United States v. Dotterweich*, 320 U.S. 277, 284-85 (1943) (regarding prosecution of corporate officer whose company shipped adulterated food, "Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are wholly helpless."); *Balint*, 258 U.S. at 252-53 (regarding sale of drugs, "[W]here one deals with others and his mere negligence may be dangerous to them . . . the policy of the law may, in order to stimulate proper care, require punishment of the negligent person, though he be ignorant of the noxious character of what he sells.").

[28] *See Balint*, 258 U.S. at 252-53 (drugs); *Dotterweich*, 320 U.S. at, 284-85 (food).

[29] *See Freed*, 401 U.S. at 608-09 (hand grenades); *Int'l Minerals & Chem. Corp.*, 402 U.S. at 564-65 (sulfuric acid).

[30] *Dean v. United States*, 556 U.S. 568, 575-76 (2009).

he better be careful or he may be liable for another crime.[31]  The Supreme Court has acknowledged that "the term 'strict liability' is really a misnomer" in the context of dangerous or highly regulated activities.[32]  "True strict liability might suggest that the defendant need not know that he was dealing with a dangerous item," but the Supreme Court has "avoided construing criminal statutes to impose [this] rigorous form of strict liability."[33]

### D. Due-Process Implications

Most of the time, the Supreme Court's discussion of strict-liability offenses occurs in the context of statutory construction because the Court will often read a culpable mental state into a federal statute even if the statutory language is silent.[34]  But there is one case from the Supreme Court that has found a due-process violation, and there are other cases from the Court that discuss in *dicta* the due-process implications of imposing a "rigorous" form of strict liability.

In *Lambert v. California*, the Supreme Court addressed an ordinance that required a person who was previously convicted of a felony to register with the City of Los Angeles if the person stayed in the city for more than five days or came into the city on five or more occasions during a thirty-day period.[35]  The Court held that the registration statute violated due process when it was

---

[31]  *See Lomax v. State*, 233 S.W.3d 302, 305 & n.7 (Tex. Crim. App. 2007).

[32]  *Staples*, 511 U.S. at 607 n.3.

[33]  *Id.*; *see also Hazelwood*, 946 P.2d at 884 n.16 ("In other words, even strict liability crimes do not dispense with the requirement of criminal intent. Rather, because they rest on a fair presumption of unreasonableness, they do not require that negligence be shown separately.").

[34]  *See Staples*, 511 U.S. at 605-06 ("[W]e have noted that the common-law rule requiring *mens rea* has been followed in regard to statutory crimes even where the statutory definition did not in terms include it.").

[35]  355 U.S. 225, 226 (1957).

applied to a person who had no actual knowledge of his duty to register and where no showing was made "of the probability of such knowledge."[36] "Engrained in our concept of due process," the Court held, "is the requirement of notice."[37] Although notice is an important component of procedural due process in defending against a criminal charge, it is also a consideration in determining whether certain behavior can even be considered a criminal law violation.[38]

In *Powell v. Texas*, the Supreme Court recognized its holding in *Lambert* but nevertheless stated that the "Court has never articulated a general constitutional doctrine of *mens rea*."[39] It is true that the Court focused on the fact that the crime in *Lambert* was one of "omission."[40] But the Court also noted that there was no suggestion that the defendant in the case before it—who was arguing that he lacked *mens rea* due to his alcoholism—"was not fully aware of the prohibited nature of his conduct and of the consequences of taking his first drink."[41]

While *Lambert* dealt with what the Court called a defendant's "wholly passive" behavior,[42] the Supreme Court has in later cases suggested that due process may apply to more active behavior if the activity engaged in is not the sort that would place the defendant on notice of the probability

---

[36] *Id.* at 227-30. *See also Smith*, 361 U.S. at 150 (citing *Lambert* and observing that, while the States had the power to create strict-liability offenses, "there is precedent in this Court that this power is not without limitations").

[37] *Lambert*, 355 U.S. at 228.

[38] *Id.*

[39] 392 U.S. 514, 535 & n.27 (1968).

[40] *Id.* at 535 n.27.

[41] *Id.*

[42] *Lambert*, 355 U.S. at 228. *See also Powell*, 392 U.S. at 535 n.27.

of regulation. In *United States v. Int'l Minerals & Chem. Corp.*, the Supreme Court explained that, while the dangerous nature of drugs, hand grenades, and sulfuric acid are sufficient to place a person on notice of regulation, more innocuous products such as "[p]encils, dental floss, [and] paper clips . . . may be the type of products which might raise substantial due process questions if Congress did not require . . . *mens rea* as to each ingredient of the offense."[43] In that case, the Court also observed that a person who believed in good faith that he was shipping water instead of sulfuric acid was not covered by terms of the statute that required the defendant to know what substance he was transporting.[44] In *United States v. Freed*, the Court contrasted the case before it with *Lambert*, saying "an agreement to acquire hand grenades is hardly an agreement innocent in itself" because hand grenades are highly dangerous weapons, "no less dangerous than the narcotics involved in *United States v. Balint*."[45]

### E. Illustrative Texas Cases

Two of our own recent cases, though not dealing with constitutional issues, illustrate how a mental element of sorts comes into play with respect to what is denominated a strict-liability offense. In *Farmer v. State*, a defendant accused of driving while intoxicated (DWI) contended that he was entitled to a jury instruction on "voluntariness" because he did not intentionally consume an intoxicating substance.[46] The defendant in that case took prescription medications on a daily

---

[43] 402 U.S. at 564-65.

[44] *Id.* at 563-64.

[45] *Freed*, 401 U.S. at 609 & n.14.

[46] 411 S.W.3d 901, 902 (Tex. Crim. App. 2013).

basis—taking Ultram, and sometimes Soma, in the morning and taking Ambien at night.[47] However, on the day of the incident, the defendant took Ambien in the morning and was later involved in an auto accident.[48] The defendant contended that he was entitled to a defensive instruction on voluntariness because there was evidence that he took the Ambien by mistake, thinking it was Soma.[49]

We explained that DWI is a strict-liability crime, "meaning that it does not require a specific mental state (e.g., intentionally, knowingly, or recklessly intending to operate a motor vehicle while intoxicated), only a person on a public roadway voluntarily operating a motor vehicle while intoxicated."[50] Rejecting the defendant's claim, we found in essence that the defendant was at least negligent with respect to whether he was taking an intoxicating substance.[51] We contrasted the defendant's case with *Torres v. State*, where we had held that the defendant was entitled to an instruction on involuntary intoxication because there was evidence that someone had, without her

---

[47] *Id.*

[48] *Id.*

[49] *Id.* at 902-03.

[50] *Id.* at 905.

[51] *Id.* at 907-08 ("Stated another way, this is not a case of unknowingly or unwillingly taking pharmaceutical medication (similar to *Torres*); this is a case of knowingly taking pharmaceutical medication but mistakenly taking the wrong one. While we may be sympathetic to a 'mistake,' Appellant was involved in two accidents because of his 'mistake.' Even if Appellant took the medication in error, that error was made because Appellant did not take the time to verify the medication he was taking, although he knew that he was prescribed medications that could have an intoxicating effect.").

knowledge, slipped an intoxicating substance into her beverage.[52]  Because the defendant in *Farmer*

had some culpability for consuming an intoxicating substance, he was in a similar position to

someone who consumed "that first drink" and, therefore, was responsible for ascertaining whether

he was or would be intoxicated when he drove.[53]

We agreed in *Farmer* that a defendant such as the one in *Torres*, who was not culpable with

respect to consuming an intoxicating substance, should be entitled to a defensive instruction.[54]

Regardless of whether our statutes require such a result, I think that due process does.  Inflicting

harsh punishment for the offense of DWI upon a person who lacks any culpability for consuming

an intoxicating substance and also lacks any culpability for driving while intoxicated violates

fundamental notions of justice.

The second case that I find instructive is *Celis v. State*, where the defendant was charged with

falsely holding himself out as a lawyer.[55]  The defendant in that case contended that he was entitled

to a culpable-mental-state instruction or a mistake-of-fact instruction on whether he believed that

he was licensed to practice law.[56]  He claimed that such an instruction was raised by evidence that

he believed himself to be authorized to practice law in Mexico.[57]  We rejected the defendant's claim

---

[52] *Id.* at 907-08 & n.9; *Torres v. State*, 585 S.W.2d 746, 748-49 (Tex. Crim. App. [Panel Op.] 1979).

[53] *See Lomax*, 233 S.W.3d at 305 n.7.  *See also Powell*, 392 U.S. at 535 n.27.

[54] *Farmer*, 411 S.W.3d at 907 n.9.

[55] 416 S.W.3d 419, 421 (Tex. Crim. App. 2013).

[56] *Id.* at 422.

[57] *Id.* at 421.

in part because "[a]cting as a lawyer is highly regulated conduct" and, therefore, the legislature has "placed the burden of complying with conditions imposed for the protection of the public upon those who hold themselves out as lawyers for profit, rather than placing upon the public the burden of determining whether an individual is qualified and eligible to provide legal services."[58] A defendant who holds himself out as a lawyer acts with at least some degree of mental culpability because he should be aware of the probability of strict regulation of the legal profession, even if he lacks a culpable mental state with respect to whether he is validly licensed.[59]

### F. Summary

To summarize, every person in this country has a fundamental right to be free from harsh criminal punishment when mental culpability is entirely absent. Mental culpability is entirely absent if, and only if, the person lacks a culpable mental state with respect to (1) an element of the offense that is crucial to imposing criminal liability, *and* (2) the existence of facts that would place him on notice of the probability of strict regulation that would impose a duty to ascertain whether his conduct violates the law. The term "culpable mental state" in this context is broadly defined, including more than simply those that are statutorily recognized and embracing even the concept of ordinary negligence. Many so-called strict-liability offenses contain at least an implied culpable mental state with respect to facts that give notice of the probability of strict regulation. When that is the case, the strict-liability offense in question does not involve a fundamental right because it

---

[58] *Id.* at 425-27.

[59] The statute does not explicitly assign a culpable mental state to the act of holding oneself out to be a lawyer, *see* TEX. PENAL CODE § 38.122(a), but it is hard to imagine how someone could hold himself out to be a lawyer without knowing that he is doing so, much less without at least a culpable mental state of negligence with respect to that conduct.

does not impose criminal liability on a person who entirely lacks any mental culpability. But some offenses do not require any mental culpability at all. This latter type of offense imposes a "rigorous" form of strict liability and implicates a fundamental right if the offense carries harsh penalties and the offense is applied to a person who entirely lacks any mental culpability. When a fundamental right is implicated, application of a rigorous strict-liability offense violates due process unless it is narrowly tailored to serve a compelling state interest.

### III. CHILD SEX OFFENSES

### A. Status Throughout the Nation

I begin my discussion of child sex offenses by acknowledging that the Supreme Court has recognized sex offenses as an exception to the deeply rooted notion that criminal liability must depend upon a "vicious will."[60] This exception may be less than it appears when one considers that the term "vicious will" was not necessarily understood by the Supreme Court to encompass all types of mental culpability—it meant an "evil-meaning mind," not necessarily a negligent mind.[61]

Nevertheless, "[p]rior to 1964, it was the universally accepted rule in the United States that a defendant's mistaken belief as to the age of a victim was not a defense to a charge of statutory rape."[62] California was the first to break with such precedent, holding that a good-faith and reasonable belief that a victim was over the age of consent was a defense to statutory rape.[63] The

---

[60] *Morissette*, 342 U.S. 246, 251 & n.8.

[61] *Id. See also* this opinion, *ante*.

[62] Colin Campbell, *Mistake or lack of information as to the victim's age as defense to statutory rape*, 46 A.L.R.5th 499, summary (1997, 2013).

[63] *Id.*; *People v. Hernandez*, 61 Cal. 2d 529, 393 P.2d 673 (1964).

Court of Appeals for the Armed Forces has noted that one state imposes a culpable mental state with respect to age as an element of the crime (Ohio) while twenty other states currently allow for some form of mistake-of-age defense for sex offenses involving children[64]—although only four (Alaska, Indiana, Kentucky, and Washington) allow such a defense regardless of the child's actual age.[65] Just four states—Alaska, California, New Mexico, and Utah—have ever recognized a mistake-of-age defense without specific statutory authorization.[66] Of those four states, California and New Mexico remain the only states operating under a judicially created mistake-of-age defense.[67] Alaska has codified its defense[68] while Utah has statutorily disallowed such a defense.[69] Utah's Supreme Court subsequently upheld as constitutional the statute disallowing a mistake-of-age defense.[70] Alaska is the only jurisdiction that has suggested that a mistake-of-age defense is constitutionally required,[71] and the Supreme Court of Alaska later clarified that its due-process holding was based upon its state

---

[64] *United States v. Wilson*, 66 M.J. 39, 43-44 & n.8 (C.A.A.F. 2008).

[65] *See id.* (citing statutes from Alaska, Indiana, and Kentucky). The Court of Appeals for the Armed Forces stated that only three states have done so, but my research indicates that a fourth state—Washington— allows a defense regardless of the child's actual age. WASH. REV. CODE ANN. § 9A.44.030(2), (3).

[66] *Wilson*, 66 M.J. at 43 (citing *Hernandez*; *Perez v. State*, 111 N.M. 160, 803 P.2d 249 (N.M. 1990); *State v. Elton*, 680 P.2d 727 (Utah 1984); *State v. Guest*, 583 P.2d 836 (Alaska 1978)).

[67] *Id.* The Court of Appeals for the Armed Forces stated that California is the only remaining state, *id.*, but my research has failed to uncover a statutory source of authority for New Mexico's defense beyond the New Mexico Supreme Court's holding in *Perez*.

[68] *Wilson*, 66 M.J. at 43-44 & n.8.

[69] *Id.* at 43-44 & n.9. *See also State v. Jimenez*, 284 P.3d 640, 643 n.4 (Utah 2012).

[70] *State v. Martinez*, 52 P.3d 1276, 1280-81 (Utah 2002).

[71] *See Guest*, 583 P.2d at 838-39.

constitution.[72]  Meanwhile, we have long construed various statutes proscribing child sex offenses as not allowing for a mistake-of-age defense.[73]

Deciding that the submission of a mistake-of-age defense is sometimes required by the Due Process Clause of the United States Constitution would be breaking new ground, but doing so would be necessary if logic and precedent seem to require it and if such a holding were based, at least in part, upon a relatively new development in the law.  As I shall further explain, logic and precedent do seem to require such a holding, and there is at least one relatively new, relevant development in the law: *Lawrence v. Texas*.

### B. Harsh Punishment

In this country, people have a fundamental right not to be punished harshly when mental culpability is entirely absent.  The first question to address, then, is whether the Texas legislative scheme imposes harsh punishments for the commission of child sex offenses.  I also consider whether this is a new development.

Historically, Texas law included rape of a child within the offense of rape, which carried heavy penalties.  As early as 1879, the offense of rape, including rape of a child with or without consent, carried a punishment range of "death or . . . confinement in the penitentiary for life, or for any term of years not less than five."[74]  The modern Penal Code has spread out the proscribed

---

[72]  *State v. Fremgen*, 914 P.2d 1244, 1245-46 (Alaska 1996).  *See also Martinez*, 52 P.3d at 1281 n.8 (referring to Alaska's holding as based on its state constitution); *Owens v. State*, 352 Md. 663, 675 n.6, 724 A.2d 43, 49 n.6 (1999) (same).

[73]  *See Black v. State*, 26 S.W.3d 895, 898-99 (Tex. Crim. App. 2000); *Zachary v. State*, 57 Tex. Crim. 179, 182-83, 122 S.W. 263, 265-66 (1909).

[74]  Tex. Penal Code arts. 528, 534 (1879).

conduct into several different provisions with punishments that range from two years to life, depending on the age of the victim and the seriousness of the conduct.[75]

One relatively new development that has made convictions for sex offenses more burdensome to offenders is the registration system.[76] That system, which often requires registration for life,[77] damages an offender's reputation by giving notice to the public and law-enforcement agencies of the defendant's sex-offender status. Further, if a jury were inclined to be lenient with respect to punishment because it believed that the defendant made a reasonable mistake about the child's age, it could not do anything about the burdens imposed by the registration system. Even without the registration system, child sex offenses are and have always been serious crimes in Texas. They are a far cry from mere public-welfare offenses that carry only light penalties.[78] Thus, for the purpose of determining whether a fundamental right is involved, Texas does indeed impose harsh punishments for child sex offenses. And though harsh punishment itself is not new, the burden of registration is relatively new.[79]

---

[75] *See* TEX. PENAL CODE §§ 21.02 (25 to 99 years or life), 21.11(a)(1), (d) (second-degree felony), 22.011(a)(2), (f) (first- or second-degree felony), 22.021 (a)(1), (2)(A), (B), (e), (f) (first-degree felony, minimum 25 year sentence under certain circumstances); 43.25(b), (c) (second-degree felony, first-degree felony if child under age 14). *See also id.* §§ 12.32 (5 to 99 years or life for first-degree felony), 12.33 (2 to 20 years for second-degree felony).

[76] *See* TEX. CODE CRIM. PROC., Ch. 62, generally.

[77] *See id.* art. 62.101.

[78] *See Staples*, 511 U.S. at 618 ("public welfare" label not apt for offense that is a felony). *See also Guest*, 583 P.2d at 838 ("Statutory rape may not appropriately be categorized as a public welfare offense. It is a serious felony.").

[79] As I have explained above, the registration requirement is a burden the finder of fact can do nothing about, and that is true even if the finder of fact believed that the defendant was entirely blameless with respect to whether he was dealing with a child. Responding to my comments regarding sex offender registration, Judge Alcala's concurring opinion takes issue with the idea that

## C. Mental Culpability

### 1. *Rationales for Strict Liability*

The next question to address is whether child sex offenses impose a rigorous form of strict liability—liability without any mental culpability whatsoever. I also consider whether this is a new development. A number of reasons for imposing strict liability for child sex offenses have been articulated, but they generally fall within two overarching types of rationales: (1) that the defendant in such a situation knows or should know that his conduct is, in some manner, wrongful or risky, and (2) that children need to be protected.[80] The first type of rationale relates to whether the defendant possesses some sort of mental culpability, and thus, to whether a fundamental right is implicated. If he knows or should know that his conduct is wrongful or risky, then he may be said to possess some mental culpability, under the broad constitutional definition, even if he does not possess a specific culpable mental state regarding the age of the child. The second type of

---

a defendant who has sexual relations with a child under fourteen could ever be blameless because, in her view, that idea is contrary to what the legislature has enacted. Elsewhere, the concurring opinion contends that the legislature has not acted unreasonably or arbitrarily in this regard. As has been discussed above, and will be further discussed below, the legislature is not always the final word on what constitutes blameworthy behavior. The legislature does not have *carte blanche* to impose criminal liability on those who are factually blameless. And as will be seen below, the concurring opinion uses the wrong standard when it asks whether the legislature has "acted unreasonably or arbitrarily." That is the standard for a "rational basis" review, which is inapplicable if the law infringes upon a fundamental right. In any event, I do not contend that the severity of punishment is sufficient, by itself, to require the imposition of an affirmative defense of mistake of age. There is far more to my substantive-due-process argument, which I expound upon further below.

[80] *See Collins v. State*, 691 So. 2d 918, 923 (Miss.1997) ("Historically, there have been two basic rationales for statutory rape laws. The first rationale is the need for strict accountability to protect young girls. The second rationale is the premise that the defendant's intent to commit statutory rape can be derived from his intent to commit the morally or legally wrongful act of fornication.").

rationale—protecting children—does not speak to whether the defendant possesses any mental culpability and, therefore, is not relevant to whether a fundamental right is implicated. Rather, the protecting-children rationales are relevant to the next step in the substantive-due-process analysis: whether legislation is narrowly tailored to serve a compelling state interest. Consequently, I focus first on the wrongful-conduct rationales to determine whether a fundamental right is even implicated.

Wrongful-conduct rationales take various forms, but most of them share a similar focus, and, as a group, I will call them the "peril" rationales. These are the rationales that are generally used to justify strict-liability offenses, and they say that something about the defendant's conduct places him on notice that he acts at his peril and must take care to avoid violating the law.[81] Some courts have said that a person who engages in sexual relations with an individual who is not his spouse is engaging in conduct that constitutes the crime of fornication, and because the defendant knows or should know that such conduct is a crime, he assumes the risk that he may be committing a crime

---

[81] *See also* this opinion, part IIC.

involving someone under the age of consent.[82]  In an early case, we also articulated this rationale.[83]

Other courts, including our Court, have taken the position that fornication at least violates societal morals, causing the actor to assume the risk that his consort is underage:

> While, within principles explained in another connection, no one is ever punishable for any act in violation of law whereto, without his fault or carelessness, he was impelled by an innocent mistake of facts, this rule does not free a man from guilt of his offense by reason of him believing, on whatever evidence, that the girl is above the statutory age.  His intent to violate the laws of morality and the good order of society, though with the consent of the girl, and though in a case where he supposes he shall escape punishment, satisfies the demands of the law, and he must take the consequences.[84]

---

[82]  *Holton v. State*, 28 Fla. 303, 308, 9 So. 716, 717 (1891) ("It is unlawful per se to carry on such practices with any female not the lawful wife of the malfeasor, and we think that the offense here, so far as intent is involved, comes within the rule, that a man shall be held responsible for all the consequences of his wrongdoing. By having illicit intercourse with any female he violates the law; should it turn out that the partner in his crime is within the prohibited age, he will not be allowed to excuse himself by asserting ignorance as to her age."); *Commonwealth v. Murphy*, 165 Mass. 66, 70, 42 N.E. 504, 505 (1895) ("The defendants in the present cases knew they were violating the law.  Their intended crime was fornication at the least.  It is a familiar rule that, if one intentionally commits a crime, he is responsible criminally for the consequences of his act if the offence proves to be different from that which he intended."); *Collins*, 691 So. 2d at 923 (intent to commit statutory rape derived from the legally or morally wrongful act of fornication).  *See also Guest*, 583 P.2d at 839 (referring to, but rejecting, position of other jurisdictions that conduct can be punished as rape because the actor at least understood that he was committing the crime of fornication); *Elton*, 680 P.2d at 730 (same).

[83]  *Edens v. State*, 43 S.W. 89, 89 (Tex. Crim. App. 1897) (quoting McClain, Cr. Law, § 451: "Where the offense is in having connection with a child under the age of consent, belief on the part of the defendant that she was over the age of consent, and that, therefore, consent on her part would prevent the act from being criminal, cannot be shown.  Connection with a child under the age of consent being criminal, one who has connection with a female which would, in any event, be unlawful, must know at his peril whether her age is such as to make the act a rape.").

[84]  *Zachary*, 57 Tex. Crim. at 183, 122 S.W. 265-66 (quoting Bishop, *Statutory Crimes*, § 490); *Edens*, 43 S.W. at 89 (same); *Territory v. De los Santos*, 42 Haw. 102, 106 (1957) (same); *State v. Houx*, 109 Mo. 654, 661, 19 S.W. 35, 37 (1891) (quoting second sentence only, from Wharton on Criminal Evidence, § 724).  *See also Collins*, 691 So. 2d at 923 (citing 6 Am. Jur.2d, *Proof of Facts*, § 2 (1975)); *State v. Wade*, 224 N.C. 760, 761, 32 S.E.2d 314, 315 (1944) (quoting 44 Am. Jur., § 41, p. 926: "In any event, he has committed a moral wrong [sexual

Nebraska takes the position that a reasonable mistake about a victim's age is no defense because it is not unfair "to require one who gets perilously close to an area of proscribed conduct to take the risk that he may cross over the line."[85]  It is not clear what constitutes "getting perilously close to proscribed conduct" with respect to the victim's age, but the statement was derived from a case in which the issue was whether there should be a  defense based upon a reasonable mistake of fact regarding whether the underage victim was "chaste."[86]  A defendant who had sexual relations with an underage female took his chances on whether she was chaste.[87]

Citing *Bowers v. Hardwick*,[88] Maryland's high court has suggested an even broader form of "peril" rationale, in line with holdings for public-welfare offenses: "that a person has no constitutional right to engage in sexual intercourse, at least outside of marriage, and sexual conduct is frequently subject to state regulation."[89]  The Supreme Court of Massachusetts has also suggested a relationship between the rule of strict liability for child sex offenses and the rationale for strict liability for public-welfare offenses.[90]

Aside from the "peril" rationales, there is another rationale that I will call the "empirical"

---

intercourse with an unmarried female], and he was bound to know, at his peril, that her age was such that consent on her part would prevent the act from being rape.").

[85]  *State v. Campbell*, 239 Neb. 14, 19, 473 N.W.2d 420, 425 (1991); *State v. Navarrete*, 221 Neb. 171, 175, 376 N.W.2d 8, 11 (1985).

[86]  *State v. Vicars*, 186 Neb. 311, 312-14, 183 N.W.2d 241, 242-43 (1971).

[87]  *Id.*

[88]  478 U.S. 186 (1986).

[89]  *Owens*, 352 Md. at 683, 724 A.2d at 53.

[90]  *Murphy*, 165 Mass. at 70, 42 N.E. at 505.

rationale. This rationale holds that, as an empirical matter, an adult who observes and interacts with a child knows or should know from that observation and interaction that the child is underage. The Maryland court seems to have taken this position, arguing that strict liability with respect to the victim's age is permissible in part because a perpetrator who "confronts the underage victim personally . . . may reasonably be required to ascertain that victim's age."[91] As will be discussed later, the main drawback of the empirical rationale is that it is not true in every case.

### 2. *Statutory Developments*

Three statutory developments in Texas may undercut these rationales. The first is the abolition of the offense of fornication. The legislature repealed the statutes outlawing fornication and adultery in 1973.[92] To the extent that one might, in the past, have argued that a person necessarily possessed a mental culpability with respect to risky or dangerous circumstances because engaging in sexual relations with a non-spouse was a crime, that rationale no longer applies. But as explained above, our Court also explicitly articulated a rationale based on societal morals rather than merely on the illegality of fornication.

The second development is the fact that the age of consent has risen throughout the years. In 1879, sexual relations with a consenting child was rape only if the child was "a female under the

---

[91] *Owens*, 352 Md. at 680, 724 A.2d at 51. The Maryland court elaborated, "Indeed, it is hard to imagine when a defendant, necessarily four years older than the victim . . . would be 'morally blameless' when he or she engages in sexual intercourse with a child as young as age 13." *Id.* at 680-81, 724 A.2d at 51-52.

[92] *See City of Sherman v. Henry*, 910 S.W.2d 542, 551 n.4 (Tex. App.–Dallas 1995) (citing TEX. PENAL CODE ANN. art. 503 (Vernon 1925), repealed by Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 1973 Tex. Gen. Laws 883, 992 (fornication); TEX. PENAL CODE ANN. art. 499 (Vernon 1925), repealed by Act of June 14, 1973, 63d Leg., R.S., ch. 399, § 1973 Tex. Gen. Laws 883, 992 (adultery)).

age of ten."[93]  In 1895, such conduct became rape only if the child was a "female under the age of

fifteen years, other than the wife" of the actor.[94]  In 1925, such conduct became rape if the child was

a female under the age of eighteen and was not the wife of the actor, but it was a defense if the actor

could show that the child was at least fifteen, consented, and "was not of previous chaste

character."[95]  In 1974, various child sex offenses proscribed various forms of sexual conduct with

a child younger than seventeen (who was not a spouse), but it was a defense that the child was at

least fourteen and had a history of engaging promiscuously in the sexual conduct.[96]  The promiscuity

defense was deleted from the various child sex offenses in 1994.[97]  Our state's modern child-sex-

offense statutes generally provide an age of consent of seventeen,[98] with younger ages resulting in

an aggravated offense or an aggravated punishment,[99] but one Texas statute criminalizes sexual

conduct involving a child under age eighteen.[100]  Texas retains a defense for consensual sexual

---

[93]  TEX. PENAL CODE art. 528 (1879).

[94]  TEX. PENAL CODE art. 633 (1895).

[95]  TEX. PENAL CODE art. 1183 (1925).

[96]  TEX. PENAL CODE §§ 21.09, 21.10, 21.11 (Vernon's 1974).

[97]  Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994 (amending TEX. PENAL CODE §§ 21.11, 22.011).

[98]  TEX. PENAL CODE §§ 21.11(a), 22.011(c)(1).

[99]  *Id.* §§ 21.02(b)(2) (age 14), 22.021(a)(2)(B), (f)(2) (same), 22.021(f)(1) (age 6).

[100]  TEX. PENAL CODE § 43.25(b) ("A person commits an offense if, knowing the character and content thereof, he . . . induces a child younger than 18 years of age to engage in sexual conduct . . . .").  At one time, it was an affirmative defense to prosecution under this provision if the actor "in good faith, reasonably believed that the child . . . was 18 years of age or older." *See* TEX. PENAL CODE § 43.25(f)(1) (West 2000).  This affirmative defense no longer exists. *See* TEX. PENAL CODE § 43.25, *passim* (current).

relations with a child fourteen years or older who is the spouse of the actor.[101]

It appears that the rising age of consent has been a trend in other states as well.[102] The Supreme Court of California has suggested that the purpose of the rule that a defendant acts "in peril" with respect to the child's age has been undermined by statutory increases in the age of consent.[103] In *Hernandez*, that court noted that the Model Penal Code prescribes a mistake-of-age defense when the criminality of any conduct depends on the child being under a specified age that is higher than ten.[104] The court also quoted from a commentator who criticized the logic of applying strict liability after the age of consent had been raised above ten:

> When the law declares that sexual intercourse with a girl under the age of ten years is rape, it is not illogical to refuse to give any credence to the defense, "I thought she was older, and I therefore did not believe that I was committing a crime when I had sexual intercourse with her." . . . But when age limits are raised to sixteen, eighteen, and twenty-one, when the young girl becomes a young woman, when adolescent boys as well as young men are attracted to her, the sexual act begins to lose its quality of abnormality and physical danger to the victim. Bona fide mistakes in the age of girls can be made by men and boys who are no more dangerous than others of their social, economic and educational level. . . . Even if the girl looks to be much older than the age of consent fixed by the statute, even if she lies to the man concerning her age, if she is a day below the statutory age sexual intercourse with her is rape. The man or boy who has intercourse with such girl still acts at his peril. *The statute is interpreted as if it were protecting children under the age of ten.*[105]

---

[101] *Id.* §§ 21.11(b-1), 22.011(e)(1), 43.25(f)(1). *See also id.* §§ 21.02, 22.021 (applying to children under age 14 and providing no spousal defense). The discussion of defenses here is historical and illustrative and is not an attempt to comprehensively catalogue the various defenses that apply to sexual offenses involving children.

[102] *People v. Cash*, 419 Mich. 230, 244 & n.11, 351 N.W.2d 822, 827-28 & n.11 (1984).

[103] *Hernandez*, 61 Cal. 2d at 533, 393 P.2d at 675-76.

[104] *Id.* at 533 n.2, 393 P.2d at 676 n.2.

[105] *Id.* at 534 n.3, 393 P.2d at 676 n.3 (quoting Plascowe, SEX AND LAW, 184-85 (1951)) (emphasis in *Hernandez*).

Michigan's high court has rejected the argument that the increased age of consent has undermined the rationale for strict-liability offenses,[106] and other courts have expressly declined to follow the California Supreme Court's ultimate holding in *Hernandez*.[107] Furthermore, *Hernandez* was not decided on constitutional grounds.[108] I do not believe that the rise in the age of consent is alone sufficient to undermine the "peril" rationales, but it is a factor to consider.

A third potentially relevant statutory development in Texas is the dramatic increase in the length of the period of limitations applicable to child sex offenses. In 1974, all sex offenses had a limitation period of one year.[109] The short limitation period might have provided a certain amount of protection for someone who reasonably, but mistakenly, believed that he was dealing with an adult.[110] But limitation periods have progressively lengthened for child sex offenses.[111] Now there

---

[106] *Cash*, 419 Mich at 244, 351 N.W.2d at 827-28.

[107] *State v. Superior Court of Pima County*, 104 Ariz. 440, 442-43, 454 P.2d 982, 984-85 (1969); *State v. Silva*, 53 Haw. 232, 232-33, 491 P.2d 1216, 1216-17 (1971); *State v. Stiffler*, 117 Idaho 405, 409, 788 P.2d 220, 224 (1990); *Garnett v. State*, 332 Md. 571, 583-85, 632 A.2d 797, 803-04 (1993); *Commonwealth v. Miller*, 385 Mass. 521, 522-23, 432 N.E.2d 463, 464-65 (1982); *State v. Morse*, 281 Minn. 378, 384-85, 161 N.W.2d 699, 703 (1968); *Navarrete*, 221 Neb. at 174-75, 376 N.W.2d at 11; *Goodrow v. Perrin*, 119 N.H. 483, 488-89, 403 A.2d 864, 868 (1979); *State v. Yanez*, 716 A.2d 759, 763-66 (R.I. 1998); *State v. Fulks*, 83 S.D. 433, 436-37, 160 N.W.2d 418, 419-20 (1968), *overruled on other grounds by State v. Ree*, 331 N.W.2d 557 (1983); *State v. Jadowski*, 272 Wis. 2d 418, 441 n.49, 680 N.W.2d 810, 822 n.49 (2004).

[108] *Hernandez*, 61 Cal. 2d at 536, 393 P.2d at 677 ("We hold only that, in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking.").

[109] *See* TEX. CODE CRIM. PROC. ANN. art. 12.01, historical note (Vernon's 1977) (referring to 1975 amendment deleting subd. (4), which had read: "one year from the date of the commission of the offense: any felony in Penal Code Chapter 21 (Sexual Offenses)").

[110] This might have occurred through the exercise of prosecutorial discretion. *See Morse*, 281 Minn. at 385, 161 N.W.2d at 703 ("There may be cases where an application of [a law providing that criminal intent does not require proof of knowledge of the age of a child] leads to an unjust result. This is not one of them. In fact situations where the underage female is the aggressor and her

is no limitation for the prosecution of most child sex offenses.[112]

I do not question the wisdom of the legislature in enacting various changes in the law with respect to child sex offenses. Much more information exists now than in the past about child sex offenses that might support the wisdom of, among other changes, higher ages of consent and longer periods of limitation, including grooming conduct engaged in by perpetrators and the characteristics of child-sex-abuse victims.[113] I mean only to point out that, in accomplishing otherwise laudable purposes, some of these changes have stripped away certain protections from those who acted reasonably and in good faith. This is not determinative of the issue before us but provides some background to assess what I see as the truly new and important legal development that changes the fundamental-rights analysis in this case.

### 3. *Lawrence v. Texas*

That development is the Supreme Court's decision in *Lawrence v. Texas*. To understand the impact of *Lawrence*, we must first understand the decision it overruled, *Bowers v. Hardwick*. In 1982, Hardwick was charged with violating a Georgia statute criminalizing sodomy for committing

---

male partner the real victim, it is likely that the good judgment of prosecutors and jurors will prevent a miscarriage of justice.").

[111] *See* TEX. CODE CRIM. PROC. ANN. art. 12.01, historical note (Vernon's 1977) (1975 amendment removed one-year provision so that sex offenses would fall within catch-all provision prescribing three-year limitation period for felonies); TEX. CODE CRIM. PROC. art. 12.01(4)(C) (1996) (five-year limitation period); TEX. CODE CRIM. PROC. art. 12.01(5)(C) (1998) (for aggravated sexual assault of a child, limitation period of ten years from victim's eighteenth birthday).

[112] TEX. CODE CRIM. PROC. art. 12.01(1)(B), (D), (E).

[113] *See Morris v. State*, 361 S.W.3d 649 (Tex. Crim. App. 2011) and *Cohn v. State*, 849 S.W.2d 817 (1993).

that act with another adult male in the bedroom of his home.[114] In addressing the case, the Supreme Court framed the issue as "whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy"[115] and held that it did not.[116] The Court stated that the claimed right to engage in homosexual sodomy did not bear any resemblance to rights of privacy that had previously been recognized as protected by due process because "[n]o connection between family, marriage, or procreation on the one hand and homosexual activity on the other has been demonstrated."[117] In response to Hardwick's argument that the majority of the Georgia's electorate's belief that homosexual sodomy is immoral did not constitute a rational basis for a law outlawing the practice, the Supreme Court noted that, "The law . . . is constantly based on notions of morality."[118]

In *Lawrence*, the Supreme Court reversed course and overruled *Hardwick*.[119] The Court criticized the *Hardwick* decision's framing of the issue as "whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy" as "disclos[ing] the Court's own failure to appreciate the extent of the liberty at stake."[120] The *Lawrence* Court pointed to what it called "an emerging awareness" from the past half-century "that liberty gives substantial protection to adult

---

[114] *Hardwick*, 478 U.S. at 187.

[115] *Id.* at 190.

[116] *Id.* at 191.

[117] *Id.* at 190.

[118] *Id.* at 196.

[119] *Lawrence*, 539 U.S. at 578.

[120] *Id.* at 566-67.

persons in deciding how to conduct their private lives in matters pertaining to sex."[121] The Court

found that this liberty belongs to all adults, whether male or female, heterosexual or homosexual:

> It suffices for us to acknowledge that adults may choose to enter upon this relationship in the confines of their homes and their own private lives and still retain their dignity as free persons. When sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring. The liberty protected by the Constitution allows homosexual persons the right to make this choice.[122]

And the Court found that this liberty belongs not only to married persons but also to unmarried

persons:

> [I]ndividual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of "liberty" protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by unmarried as well as married persons.[123]

Addressing the point made in *Hardwick* that "for centuries there have been powerful voices

to condemn homosexuality as immoral," the Court responded, "Our obligation is to define the liberty

of all, not to mandate our own moral code."[124] Although a violation of the Texas statute outlawing

homosexual conduct was punished as a mere Class C misdemeanor (fine-only offense), the Court

observed that the conviction would nevertheless be on the defendant's record and it would come

within the sex-offender registration laws of at least four States.[125] The Court found that this fact

---

[121] *Id.* at 571-72.

[122] *Id.* at 567.

[123] *Id.* at 578 (quoting Justice Stevens's dissent in *Hardwick* and concluding, "Justice Stevens'[s] analysis, in our view should have been controlling in [*Hardwick*] and should control here.").

[124] *Id.* at 571.

[125] *Id.* at 575-76.

"underscores the consequential nature of the punishment and the state-sponsored condemnation attendant to the criminal prohibition."[126]

Finally, the Court emphasized that the case before it involved consenting adults in a private setting.[127] The case did not involves minors, public conduct, injury or coercion, relationships where consent might not easily be refused, or prostitution.[128]

The rationale for holding a defendant strictly liable because he should have at least realized that he was committing the illegal, immoral, or risky conduct of fornication with an adult has been negated entirely by the holding in *Lawrence*. Under *Lawrence*, consensual sexual activity between adults, married or unmarried, is constitutionally protected.[129] Such activity can no longer be outlawed, and moral considerations with respect to such activity are no longer legally relevant. After *Lawrence*, "consensual sexual activity between adults is no longer subject to strict legislative regulation,"[130] and, thus, a defendant does not necessarily act at his peril when he reasonably believes that he is having sexual relations with an adult. The holding in *Lawrence* has led at least two law professors to contend in published law review articles that due process requires that a defense be available to an individual who engages in sexual intercourse with a person that he non-negligently

---

[126] *Id.* at 576.

[127] *Id.* at 578.

[128] *Id.*

[129] *Cf. Owens*, 352 Md. at 684, 724 A.2d at 53 (pre-*Lawrence* decision stating that "[t]he crime of statutory rape also does not implicate other constitutional rights that heighten our level of inquiry").

[130] Catherine L. Carpenter, *On Statutory Rape, Strict Liability, and the Public Welfare Offense Model*, 53 AM. U. L. REV. 313, 320-21 (2003).

believes is an adult.[131]

Few jurisdictions have addressed the impact of *Lawrence* on a defendant's eligibility for a mistake-of-age defense in "statutory rape" type prosecutions (i.e. prosecutions for child sex offenses that impose liability on the basis of the child's age for what would otherwise be consensual sexual conduct). The Supreme Court of Wisconsin's *Jadowski* case addressed a mistake-of-age due-process claim within a year after *Lawrence* was decided but did not cite it.[132] The Supreme Court of North Dakota has recently rejected a mistake-of-age due-process claim without mentioning *Lawrence*.[133] In *Wilson*, the Court of Appeals for the Armed Forces cited *Lawrence* but decided the mistake of-age question as a matter of federal statutory law.[134] The Supreme Court of New Hampshire discussed *Lawrence* and maintained that the imposition of strict liability for child sex offenses was permissible because such imposition was grounded in part on reasons other than the intent to commit the wrongful act of fornication,[135] though it appears that the court may not have been responding to a

---

[131] Arnold Loewy, *Statutory Rape in a Post Lawrence v. Texas World*, 58 SMU L. REV. 77, 77 (Winter 2005); Carpenter at 321. *See also* Jarrod Foster Reich, Note, *"No Provincial or Transient Notion": The Need for a Mistake of Age Defense in Child Rape Prosecutions*, 57 VAND. L. REV. 693, 723-25 (March 2004) ("If a person honestly and reasonably believes certain facts that would make his conduct fall within *Lawrence*'s constitutionally protected private sphere, he should not be criminally punished for an act committed under this mistaken belief.").

[132] *See Jadowski*, 272 Wis. 2d at 438-442, 680 N.W.2d at 820-22.

[133] *State v. Vandermeer*, 843 N.W.2d 686, 691 (N.D. 2014).

[134] *Wilson*, 66 M.J. at 41 & *passim*.

[135] *State v. Holmes*, 154 N.H. 723, 727-28, 920 A.2d 632, 635-36 (2007) ("We decided *Goodrow*, however, assuming, without deciding, that the plaintiff *had* a constitutionally protected privacy right to engage in consensual heterosexual intercourse with other adults . . . . Thus, the developments in the law since we decided *Goodrow* would not change our analysis. Moreover, intent to commit the then-legally wrongful act of fornication was only one of the rationales for statutory rape laws.").

constitutional claim.[136] Aside from the court below, I am aware of two intermediate appellate courts that have held that *Lawrence* did not affect a defendant's eligibility for a mistake-of-age instruction because the sexual conduct was in fact committed against a minor and *Lawrence*'s holding does not apply to minors.[137]

But the courts that say simply that *Lawrence* does not apply when a minor is involved have missed the point—making the same mistake ascribed by the *Lawrence* court to the *Hardwick* decision: having an overly narrow concept of the right at stake. If the defendant non-negligently believed that he was having consensual sex with an adult, then he non-negligently believed in the existence of circumstances that would constitutionally protect him from liability under *Lawrence*. Such a non-negligent belief would negate the existence of even the most minimal sort of mental culpability. In any event, at least three of the post-*Lawrence* cases involved a defendant who believed that the complainant was *seventeen*.[138] As I shall explain below, a belief that the complainant was under age eighteen but over the age of consent does not qualify, for constitutional purposes under *Lawrence*, as a belief that the complainant was an adult.

### 4. *Limits of Lawrence's Holding*

---

[136] *Id.* at 725, 727, 920 A.2d at 634, 635 ("The defendant first contends that we failed to interpret the statutory rape provision . . . and its predecessors, correctly in our prior cases because we did not take into account another provision of the Criminal Code . . . . The defendant next asserts that because adult consensual sexual relationships are not as regulated as they were when we decided our prior cases, there is no longer any justification for permitting strict liability for statutory rape.").

[137] *State v. Browning*, 177 N.C. App. 487, 492, 629 S.E.2d 299, 303, *review denied*, 360 N.C. 578, 635 S.E.2d 902 (2006); *United States v. Bazar*, 2012 CCA LEXIS 242, *20-21 (A.F.C.C.A. June 29, 2012, review denied).

[138] *Vandermeer*, 843 N.W.2d at 691; *Holmes*, 154 N.H. at 723, 920 A.2d at 632; *Bazar*, 2012 CCA LEXIS 242, *20.

*Lawrence*'s holding was limited to adults. While the Court's opinion in *Lawrence* did not explicitly say what age qualifies as adulthood, the United States Constitution and Supreme Court jurisprudence draw a distinct line at the age of eighteen. One must be at least eighteen years of age to vote.[139] Persons under eighteen years of age are considered juveniles for Eighth Amendment purposes, rendering them ineligible for the death penalty, for life without parole in non-homicide cases, and for automatic life without parole in any case.[140] Age eighteen also appears to be the line drawn for First Amendment purposes in determining what constitutes legally proscribable child pornography.[141] The Supreme Court has stated that "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood."[142] An eighteen-year-old has a right to exercise a certain social independence that generally does not belong to persons under that age.[143]

The statutory age of consent is irrelevant in deciding what the Constitution requires.

---

[139] U.S. CONST., Amend. 26, § 1.

[140] *Roper v. Simmons*, 543 U.S. 551, 578 (2005); *Graham v. Florida*, 560 U.S. 48, 81-82 (2010); *Miller v. Alabama*, 132 S. Ct. 2455, 2460 (2012).

[141] *United States v. Wilson*, 565 F.3d 1059, 1067 (8th Cir. 2009) ("Although the First Amendment protects non-obscene adult pornography, sexually explicit materials involving persons under the age of 18 enjoy no constitutional protection.") (citing *New York v. Ferber*, 458 U.S. 747, 764 (1982)).

[142] *Simmons*, 543 U.S. at 574. Age eighteen is also the line drawn for determining whether the onset of mental disability qualifies a person as mentally retarded. *Ex parte Briseno*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004).

[143] *See Navarro v. Pfizer Corp.*, 261 F.3d 90, 107 (1st Cir. 2001) (Campbell, J., dissenting) (referring to "the typical scenario in which, at and after age 18, a child may be regarded as having achieved substantial independence and self-sufficiency so as to be able to live on her own, support herself, and be ministered to by others than her parents"); *Tyson v. Heckler*, 727 F.2d 1029, 1032 (11th Cir. 1984) (Kravitch, J., concurring) ("in light of the Twenty-sixth Amendment and the legislative trend toward using eighteen years of age as the age of majority, twenty-one no longer is a reliable benchmark of an individual's independence from his parents").

Constitutionally, it does not matter that a defendant lacked a culpable mental state with respect to the age of consent, if that age is younger than eighteen. The constitutional alchemy[144] kicks in only when the defendant lacks a culpable mental state with respect to whether the child was in fact a child. For the "peril" rationales to be negated under *Lawrence*, a person must non-negligently believe that his sexual partner is eighteen years of age or older. A person who knows or should know that he is dealing with a child—that is, someone under age eighteen—continues to act at his peril that the child may be younger than he supposes.

For this reason, we should not quarrel with the *results* in the three post-*Lawrence* cases involving defendants who believed that their victims were seventeen years old because those defendants were at least culpable with respect to whether their victims were children. The results in a number of older cases could also be upheld on this basis.[145]

---

[144] In her article, "Texas Holds Him," for Slate.com (posted October, 10, 2007), Dahlia Lithwick used the words, "That's where the real constitutional alchemy kicks in," to describe Solicitor General Paul Clement's position in *Medellin v. Texas* that President Bush's memo to the Attorney General was the key factor that made a judgment by the International Court of Justice under the Vienna Convention treaty enforceable in Texas courts. The Supreme Court subsequently rejected Clement's position in *Medellin v. Texas*, 552 U.S. 491 (2008).

[145] *See Gaines v. State*, 354 Ark. 89, 99, 118 S.W.3d 102, 108 (2003) (defendant argued that "there appears to be no rationale why a victim['s] age is easier to ascertain when they are younger than fourteen as opposed to being fourteen or older"); *Owens*, 352 Md. at 667, 674, 724 A.2d at 45, 48 (victim told police officer that she was sixteen years old, issue before the court was "whether due process requires that Owens be allowed to defend the charge of statutory rape on the grounds that he reasonably believed that the victim was above the age of 13"); *Murphy*, 165 Mass. at 70, 42 N.E. at 504 (defendant asked for instruction that he could not be convicted unless he "knew or had good reason to believe that the girl was under sixteen years of age"); *Cash*, 419 Mich. at 236, 351 N.W.2d at 824 (defendant claimed that victim had said she was seventeen); *Houx*, 109 Mo. at 661, 19 S.W. at 37 (defendant sought to present testimony "tending to prove that he had reason to believe that the prosecutrix was . . . over the age of twelve years"); *Yanez*, 716 A.2d at 766 (defendant claimed that victim told him that she was sixteen years old); *Wade*, 224 N.C. at 761, 32 S.E.2d at 315 (defendant testified that the victim told him that she was twelve); *Zachary*, 57 Tex. Crim. at 182, 122 S.W. at 265 (defendant claimed that victim had told him that she was over the age of fifteen years);

The holding in *Lawrence* is limited in a few other respects, including the fact that it applies only to activity that is consensual and that it does not apply to prostitution.[146] If a defendant commits a factually non-consensual sexual assault (e.g., by force) or hires a prostitute,[147] the holding in *Lawrence* will not be available to negate his mental culpability. The various limitations of *Lawrence* also mean that *Lawrence* cannot be used to justify the submission of a lesser-included offense. If, even under the facts believed by him or that he ought to believe, the defendant's conduct would not be protected under *Lawrence*, then *Lawrence*'s holding is not available to negate the defendant's mental culpability, and the defendant can be held to have acted in peril that the facts are even worse than he supposes.

### 5. *The Empirical Rationale*

The holding in *Lawrence* leaves room for what I have termed the empirical rationale for imposing strict liability for child sex offenses: that a person knows or should know from observing and interacting with an underage individual that the individual is in fact a child.[148] There are undoubtedly ages at which, under all or most circumstances, it is simply not possible for a child to be reasonably mistaken for an adult. In responding to appellant's facial challenges to the aggravated-

---

*Lawrence v. Commonwealth*, 71 Va. 845, 855 (1878) (defendant sought instruction that the jury cannot find him guilty if it believed that the victim "stated to him she was twelve years old, and that he had reasonable cause to believe that she was twelve years old").

[146] *Lawrence*, 539 U.S. at 578.

[147] The trafficking of children for the purpose of prostitution is a recognized subject of international conventions. *Velez v. Sanchez*, 693 F.3d 308, 323 (2ᵈ Cir. 2012).

[148] As the earlier discussion indicates, the post-*Lawrence* question is *not* whether, as an empirical matter, a person could mistake a child for an older child, e.g. a thirteen-year-old for a fourteen-year-old.

sexual-assault statute, the amicus brief[149] offers the hypothetical of an adult male who causes his sexual organ to penetrate the anus or sexual organ of a two-year-old child. The amicus is exactly right that no reasonable adult would mistake the two-year-old for an adult. And the amicus is exactly right that this hypothetical, by itself, causes appellant's facial challenges to fail.[150]

The amicus brief emphasizes that the offense at issue in the present case is *aggravated* sexual assault, involving a child under age fourteen, and the amicus argues that no fundamental right is involved in such a case. There is some support for this position. The Supreme Court of California, which first recognized a mistake-of-age defense to statutory rape, has indicated that children under age fourteen are considered "infants" or "of tender years" and that a mistake-of-age defense may "be untenable when the offense involved a child that young."[151] On the other hand, the California court's holding concerned the offense of lewd or lascivious conduct, and the court held that "the public policy considerations in protecting children under the age of 14 from lewd or lascivious conduct are substantial—*far more so than those associated with unlawful sexual intercourse*."[152] The Court of Appeals of Maryland has noted that "Maryland's statutory rape law is less likely than a number of other state statutes to reach noncriminal sexual conduct since the

---

[149] Submitted by the 35th Judicial District Attorney's office.

[150] A statute that does not implicate First Amendment freedoms can be held unconstitutional on its face only if it is unconstitutional in all of its applications. *State v. Rosseau*, 396 S.W.3d 550, 557-58 (Tex. Crim. App. 2013). *See also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (stating that, under *United States v. Salerno*, 481 U.S. 739 (1987), a party must establish that no set of circumstances exists under which the statute would be valid, and that while some members of the Court have criticized the *Salerno* formulation "all agree that a facial challenge must fail where the statute has a 'plainly legitimate sweep.'").

[151] *People v. Olsen*, 36 Cal. 3d 638, 645-46, 685 P.2d 52, 56-57 (1984).

[152] *Id.* at 649, 685 P.2d at 59 (emphasis added).

victim in Maryland must be under fourteen years of age, while other states have adopted older ages

of consent."[153] In any event, most states that allow a mistake-of-age defense disallow such a defense

when the child's age drops below a certain threshold.[154] There seems to be no unanimity as to the

threshold age, however, with ages ranging from twelve to sixteen.[155]

Moreover, it is commonly known that some children enter puberty and mature before the age

of fourteen and may look like an adult.[156] As explained above, there are ages—such as age

---

[153] *Owens*, 352 Md. at 686 n.15, 724 A.2d at 54 n.15.

[154] ARIZ. REV. STAT. § 13-1407(B) (age 15); ARK. CODE ANN. § 5-14-102(b), (c), (d) (age 14 if actor is at least age 20); COLO. REV. STAT. § 18-1-503.5 (age 15); 720 ILL. COMP. STAT. 5/11-1.60(c), (d) & 5/11-1.70(b) (age 13); ME. REV. STAT. tit. 17-A §§ 253(1)(B), 254(1)(A), (2) (age 14); MINN. STAT. §§ 609.343(a), 609.344(a), (b) (age 13 or age 16 depending upon the relative age of the actor); MO. ANN. STAT. § 566.02(1), (2) (age 14); MONT. CODE ANN. § 45-5-511(1) (age 14); *Perez*, 111 N.M. at 162, 803 P.2d at 251 (age 13); N.D. CENT. CODE § 12.1-20-01 (age 15); OHIO REV. CODE ANN. §§ 2907.02(b), 2907.04(a) (age 13); OR. REV. STAT. § 163.325(1), (2) (age 16); 18 PA. CONS. STAT. § 3102 (age 14); TENN. CODE ANN. §§ 39-11-502(a), 39-13-504(a)(4), 39-13-522(a) (age 13); W. VA. CODE ANN. §§ 61-8B-3, 61-8B-7, 61-8B-12 (age 12); WYO. STAT. § 6-2-308 (age 14).

[155] *See* this opinion, previous footnote.

[156] *See Olsen*, 36 Cal. 3d at 645-46, 685 P.2d at 56 (court of appeals "recognizing that some females reach puberty below the age of 14"); *United States v. Langley*, 549 F.3d 726, 731-32 (8th Cir. 2008) (Beam, J., concurring) (government's attorney stated in oral arguments, "[I]f you're dealing with a child over the age of twelve or thirteen and puberty has hit . . . the government does not charge those cases unless you have someone to definitely state the age because it is difficult once a female in particular hits puberty to know exactly what age they are."); *Free Speech Coalition v. Holder*, 957 F. Supp. 2d 564, 578 (E.D. Pa. 2013) (government witness, a medical doctor, testified that the classic literature suggests that girls reach full maturation between ages fourteen and sixteen, but he further testified that he had published literature suggesting that maturation for girls is actually occurring earlier, and he testified that determining one's age by visual inspection alone is an inexact science, with a two to five year margin of error, and that margin is greater for members of the public); *Timothy J. v. Superior Court*, 150 Cal. App. 4th 847, 854, 58 Cal. Rptr. 3d 746, 749 (Cal. App. 3rd Dist. 2007, req. denied) (clinical and forensic neuropsychologist testified that a person reaches puberty around the ages of eleven, twelve, and thirteen); *Frederic v. State*, 770 So. 2d 719, 720 (Fla. App. 4th Dist. 2000), *pet. dism'd*, 817 So. 2d 846 (2002) (victim's pregnancy showed that she had already reached puberty at age thirteen); *Commonwealth v. Walter R.*, 414 Mass. 714, 717-

two—about which we can say, *by virtue of the age alone*, that it is simply not possible to reasonably mistake the child for an adult. But age thirteen is not such an age. It is true that the younger the child, the less *likely* it is that a mistake as to adulthood could reasonably be made. But the fundamental-rights question here—involving the defendant's mental culpability—does not turn upon what may generally be true about children of a certain age; it turns upon the defendant's mental culpability with respect to the child in question.[157]

### D. Compelling Interests and Narrow Tailoring

It is beyond dispute that the State has a compelling interest in safeguarding the physical and psychological well-being of children.[158] Protecting children is a widely articulated rationale for imposing strict liability for child sex offenses.[159] Courts have variously held that strict-liability laws

---

18, 610 N.E.2d 323, 325 (1993) (holding in a juvenile-delinquency case that "there is no sound legal or medical basis for a presumption that an individual under fourteen is incapable of rape, as defined at common law" and commenting that medical information suggests that "[o]ver the past century, the onset of puberty has gradually occurred at a younger age, and currently begins between the ages of ten and twelve"); *In re Frederick*, 63 Ohio Misc. 2d 229, 232 n.1, 622 N.E.2d 762, 764 n.1 (Court of Common Pleas, Cuyahoga Co., Juvenile Div. 1993) (stating that the "average age of puberty for females is eleven to eleven and a half years, and as young as nine years is considered within the range of normal. The average age of puberty for males is twelve and a half to thirteen years").

[157] There are situations in which a somewhat arbitrary line with respect to a child's age can be drawn in a statute, such as when criminal conduct becomes a greater offense or is punished more severely if the child is below a certain age. *See Black*, 26 S.W.3d at 897-98 (capital murder of a child under age six). Arbitrary line drawing in those situations is permitted for policy reasons. *Id.* Such policy reasons are inapplicable to the question of whether, as a factual matter, a fundamental right is implicated because the defendant entirely lacked any mental culpability with respect to the complainant's status as a child.

[158] *United States v. Stevens*, 559 U.S. 460, 471 (2010); *Osborne v. Ohio*, 495 U.S. 103, 109 (1990) (quoting *New York v. Ferber*, 458 U.S. 747, 756 (1982)); *Black*, 26 S.W.3d at 897 (citing *Henderson v. State*, 962 S.W.2d 544, 562 (Tex. Crim. App. 1997) (plurality op.)).

[159] *See Gaines*, 354 Ark. at 102, 118 S.W.3d at 109 ("[T]he state has an interest in the general welfare of children, and one of the most obvious duties is to protect children from sexual

for child sex offenses are needed to prevent the exploitation of children by predators,[160] to protect

children from physical injury,[161] to prevent teenage pregnancy,[162] to protect children from sexually

crimes against which children are virtually defenseless."); *Owens*, 352 Md. at 681-82, 724 A.2d at 52 ("The case law testing the constitutionality of strict liability statutory rape law is unanimous in recognizing the significance of the potential harm caused by sexual activity involving children, even with their consent."); *Cash*, 419 Mich. at 242, 244, 351 N.W.2d at 827, 828 (articulating "the need to protect children below a specified age from sexual intercourse on the presumption that their immaturity and innocence prevents them from appreciating the full magnitude and consequences of their conduct" and the need to protect children from the "possible physical or psychological harm from engaging in sexual intercourse"); *Collins*, 691 So. 2d at 923 (articulating one basic rationale for statutory rape law as "the need for strict accountability to protect young girls"); *Holmes*, 154 N.H. at 727-28, 920 A.2d at 636 (quoting *Collins* (see above), citing other out-of-state cases, and quoting *Goodrow*, 119 N.H. at 486, 403 A.2d at 866: "It is well established that the State has an independent interest in the well-being of its youth. One reason for this heightened interest is the vulnerability of children to harm. Another reason for the State's concern is that minors below a certain age are unable to make mature judgments about important matters."); *Commonwealth v. Robinson*, 497 Pa. 49, 54, 438 A.2d 964, 966 (1981) (referring to "the legislative desire to protect those who are too unsophisticated to protect themselves"); *Yanez*, 716 A.2d at 766 (absence of *mens rea* "is designed to subserve the state interest of protecting female children from the severe physical and psychological consequences of engaging in coitus before attaining the age of consent"); *Fulks*, 83 S.D. at 436, 160 N.W.2d at 420 ("The arbitrary age of consent in these cases has been established by our legislature as a matter of public policy for the obvious protection of young and immature females."); *Jadowski*, 272 Wis. 2d at 431, 680 N.W.2d at 817 ("The statute is intended to protect children. The state has a strong interest in the ethical and moral development of its children, and this state has a long tradition of honoring its obligation to protect its children from predators and from themselves.").

[160]  *Superior Court of Pima County*, 104 Ariz. at 443, 454 P.2d at 985 ("We do not think the predatory nature of man has changed in the last decade."); *Owens*, 352 Md. at 681-82, 724 A.2d at 52 (discussing the need to prevent the exploitation of children); *Cash*, 419 Mich. at 244, 351 N.W.2d at 828 (same); *Jadowski*, 272 Wis. 2d at 431, 680 N.W.2d at 817 (discussing the need to protect children from predators).

[161]  *Cash*, 419 Mich. at 244, 351 N.W.2d at 828; *Yanez*, 716 A.2d at 766.

[162]  *Stiffler*, 117 Idaho at 407, 788 P.2d at 222; *Owens*, 352 Md. at 682, 724 A.2d at 52.

transmitted diseases,[163] and to protect children from psychological injury and stigma.[164] Strict-liability statutes have been said to achieve this goal of protecting children by deterring adults from engaging in the prohibited conduct[165] and by making prosecutions easier by eliminating difficulties of proof that may occur due to the rapid physical development of children or the difficulty in rebutting a defendant's claims of mistake.[166]

But a rule of *rigorous* strict liability—that flatly denies any defense based upon mistake of age, no matter how reasonable the defendant's mistake was nor what age he reasonably believed the complainant to be—is not narrowly tailored to achieve the goal of protecting children. Such a rule

---

[163] *Owens*, 352 Md. at 682, 724 A.2d at 52.

[164] *Id.* at 682-83, 724 A.2d at 52-53; *Cash*, 419 Mich. at 244, 351 N.W.2d at 828; *Yanez*, 716 A.2d at 766.

[165] *Holton*, 28 Fla. at 307, 9 So. at 717 ("The object of the law is to deter men, by the severe penalty imposed, from voluntarily seeking intercourse with unmarried females within the prohibited age. Not only that the pure may be shielded from contamination, but that the fallen shall be deprived of the opportunity to further continue their life of sin."); *Owens*, 352 Md. at 685, 724 A.2d at 54 ("Deterrence is accomplished by placing the risk of error in judgment as to a potential sex partner's age with the potential offender."); *Collins*, 691 So. 2d at 923 ("If reasonable mistake were recognized as a defense, the very purpose of the statute would be frustrated and the deterrent effect considerably diminished."); *Holmes*, 154 N.H. at 728, 920 A.2d at 636 ("The statutes are designed to impose the risk of criminal penalty on the adult . . . [and] [i]n this way, these statutes accomplish deterrence"); *Jadowski*, 272 Wis. 2d at 431, 680 N.W.2d at 817 ("The statutes are designed to impose the risk of criminal penalty on the adult, when the adult engages in sexual behavior with a minor.").

[166] *Owens*, 352 Md. at 687, 724 A.2d at 55 (stating that strict liability "avoids the risk that the inevitably emotional statutory rape trial will focus unjustifiably on the child's appearance and level of maturity" and quoting from *Cash*: "The obvious problem is that because early adolescents tend to grow at a rapid rate, by the time of trial a relatively undeveloped young girl or boy may have transformed into a young woman or man."); *Cash*, 419 Mich. at 245, 351 N.W.2d at 828; *Jadowski*, 272 Wis. 2d at 431-32, 680 N.W.2d at 817 (stating that a mistake-of-age defense "would raise practical law enforcement problems. Age is difficult to ascertain, and actors could often reasonably claim that they believed their victims were adults"). *See also Dep't of H.U.D. v. Rucker*, 535 U.S. 125, 134 (2002) ("Strict liability maximizes deterrence and eases enforcement difficulties.").

imposes liability on even the diligent defendant, who exercises all the reasonable caution that society would expect of him.[167] A defendant who is diligent about ascertaining that his sexual partner is an adult, and reasonably (but mistakenly) believes that to be so, is not a sexual predator, nor is his relationship with the child one of exploitation.[168]

Moreover, various mechanisms, other than rigorous strict liability, can be used to deter adults from choosing the very young as sexual partners. The law can impose an explicit requirement of diligence.[169] The law can also require that the actor's reasonable, diligence-based, belief be that the child was an *adult*, not merely a child above the age of consent. An actor can thus be expected to look for social independence or other factors that signify adult status (e.g. attending university, having a of residence of one's own, paying bills). The law can also make the reasonable-mistake-of-age issue an affirmative defense, placing the burden upon the defendant to prove the circumstances that would exculpate him.[170] Placing such a burden on the defendant would preserve the heavy

---

[167] *See Hernandez*, 61 Cal. 2d at 534, 393 P.2d at 676 (referring to, as lacking criminal intent, the defendant who "has subjectively eliminated the risk [of sex with an underage person] by satisfying himself on reasonable evidence that the crime cannot be committed").

[168] *Stiffler*, 117 Idaho at 407, 788 P.2d at 222 ("We concede that the protection of girls from conscienceless men is a purpose that would not be violated by a requirement of specific intent before conviction. As to that purpose it is the conscience or state of mind of the perpetrator that is at issue. Likewise, exploitation focuses on the advantage gained by the perpetrator of the act. This is a state of mind of the perpetrator, not an effect on the female.").

[169] *See Elton*, 680 P.2d at 729 (holding that the purpose of deterring persons from engaging in intercourse with the young can be accomplished by imposing liability upon proof of criminal negligence).

[170] The Supreme Court has held that the State can impose a burden on the defendant to prove a confession-and-avoidance type defense without violating due process. *Dixon v. United States*, 548 U.S. 1, 6-8 (2006) (duress); *Patterson v. New York*, 432 U.S. 197, 205-10 (1977) (extreme-emotional-disturbance defense in a murder case, which, if proven, would reduce the offense to manslaughter); *Id.* at 210 ("We thus decline to adopt as a constitutional imperative, operative

incentive to be cautious because a person would know that, if he were accused: (1) the State would only have to prove the age of the child for the prosecution to go forward, (2) the defendant would have the burden to produce evidence of and prove his reasonable-mistake defense, (3) the trial judge might choose not to submit the defense, on the basis that the defendant has not sufficiently met his burden of production on an element of his defense or the evidence conclusively demonstrates that an element of his defense is not met, and (4) even if the defense is submitted, the finder of fact might choose not to believe the defendant's evidence.

With respect to the asserted difficulties in proof due to a child's rapid physical development and a defendant's ability to plausibly assert a mistake, such concerns are alleviated in an age of digital cameras and camcorders, in which it has become much easier to create and retain images of one's children. The ease with which images can be created increases the likelihood that a finder of fact will be able to examine images of the child from the relevant time periods. In any event, placing the burden of production and persuasion on the defendant with respect to the mistake-of-age issue would also alleviate this concern because the defendant, not the State, would suffer the risk of loss if the finder of fact is uncertain about the genuineness or reasonableness of any mistake about the child's age.

Some courts have said that recognizing a reasonable-mistake-of-age defense would

---

countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused . . . . Proof of the non-existence of all affirmative defenses has never been constitutionally required."). Even the dissent in *Patterson* recognized the legitimacy of imposing the burden of proof on the defendant for some types of defensive issues, and it cited, as one example, the adoption in a number of states of a defense to statutory rape "if the defendant shows that he reasonably believed his partner was of age." *Id.* at 229-30 & n.14 (Powell, J., dissenting).

"considerably diminish[]" the deterrent effect of child-sex-offense statutes,[171] but such conclusions appear to be mere speculation.[172] As explained above, twenty states have some form of mistake-of-age defense, and I am unaware of any evidence that those states have a higher incidence of child sex offenses, or a significantly lower incidence of successful prosecutions, than states that provide no such defense.[173] Although the mere speculative possibility of a greater deterrent effect would be sufficient to justify a rigorous strict-liability regime under the rational-basis test,[174] such speculation

---

[171] *Holmes*, 154 N.H. at 728, 920 A.2d at 636; *Collins*, 691 So. 2d at 923. *See also Yanez*, 716 A.2d at 769 (quoting Francis Bowes Sayre, *Public Welfare Offenses*, 33 COLUM. L. REV. 55, 73-74 (1933): "The reason that mistake of fact as to the girl's age constitutes no defense is, not that these crimes like public welfare offenses require no *mens rea*, but that a contrary result would strip the victims of the protection which the law exists to afford. Public policy requires it. Unless defendants were made to determine at their peril whether or not their victims fall within the class peculiarly needing the protection of the law and thus set apart, there could be no real protection.").

[172] *See Pietila v. Congdon*, 362 N.W.2d 328, 334 (Minn. 1985) (referring to "[t]he extraordinary speculation inherent in the subject of deterrence of crime"); *Goldberg v. Housing Authority*, 38 N.J. 578, 590, 186 A.2d 291, 297 (1962) (referring to "the extraordinary speculation inherent in the subject of deterrence of men bent upon criminal ventures"); *State v. Thurman*, 846 P.2d 1256, 1264 n.7 (Utah 1993) ("We acknowledge that a determination of what must be done in the interest of deterrence must involve a fair degree of speculation until much more is known about the way deterrence works in fact than now seems knowable.") (internal quotation marks omitted).

[173] *See also* Loewy at 100 ("There is no evidence that those states that allow reasonable mistake of age as a defense have fewer statutory rape prosecutions or a significantly higher acquittal rate."). Furthermore, the amicus brief contends, "Most sexual assaults of children are committed by someone the child knows, such as a parent, parent figure, or a familiar and authoritative adult." Amicus at 7 (citing Thomas D. Lyon and Julia A. Dente, *Child Witnesses and the Confrontation Clause*, 102 J. CRIM. L. & CRIMINOLOGY 1181, 1203-05 (Fall 2012)). If that is true, then a mistake-of-age defense would not be available to most persons who are charged with sexual assaults of children because those persons would or should know the child's age.

[174] *Heller v. Doe*, 509 U.S. 312, 320 (1993) (Under the rational basis test, "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification. A legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."); *Federal Communications Commission v. Beach Communications*, 508 U.S. 307, 314-15 (1993).

is not sufficient to establish narrow tailoring under the compelling-state-interest test that applies when a fundamental right is implicated.[175]

But if one considered the speculative possibility of an increase in deterrence, one would also want to consider how a rigorous-strict-liability regime could produce additional victims. The obvious example implicated in the present discussion is the essentially innocent defendant who is punished for a crime for which he entirely lacks any mental culpability. But other examples of the potential perverse effects of a rigorous-strict-liability regime can be conceived. An underage

---

[175] *Consol. Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest."); *Sherbert v. Verner*, 374 U.S. 398, 406-07 (1963) (We must next consider whether some compelling state interest enforced in the eligibility provisions of the South Carolina statute justifies the substantial infringement of appellant's First Amendment right . . . . The appellees suggest no more than a possibility that the filing of fraudulent claims by unscrupulous claimants feigning religious objections to Saturday work might not only dilute the unemployment compensation fund but also hinder the scheduling by employers of necessary Saturday work . . . . [E]ven if the possibility of spurious claims did threaten to dilute the fund and disrupt the scheduling of work, it would plainly be incumbent upon the appellees to demonstrate that no alternative forms of regulation would combat such abuses without infringing First Amendment rights.").

Judge Alcala's concurrence speculates that permitting a mistake-of-age defense would negatively impact the reporting and prosecution of child sex offenses, but I am aware of no evidence that jurisdictions that have recognized a mistake-of-age defense have had a decline in the reporting and prosecution of child sex offenses. The concurrence also contends that defense attorneys will be able to ask invasive questions of the child "in virtually any case in which a defendant could plausibly claim that he was unaware of the complainant's age." But if, as seems likely, the adult that has sexual relations with a young child is usually a family member, close family friend, familiar authority figure, or a kidnapper, then it will not be often that the defendant in a young-child case can plausibly claim reasonable, actual ignorance of the child's age. Further, the defendant has to raise the issue first, probably by his own testimony. So the victim would not be subject to such cross-examination during the State's case-in-chief, and any such questions would normally not be permissible unless and until they have been shown to be relevant to the defendant's allegations. And the defendant's evidence of mistake of age would have to indicate a mistake about whether the child was an *adult*, and not merely about whether the defendant perceived the child to be older than he or she actually was.

individual could lure an unsuspecting adult into a sexual liaison for the purpose of blackmail.[176] The existence of several cases involving blackmail about illicit sex—including one that involved a mistake of age—suggests that the scenario is not entirely far-fetched.[177]

In an article, entitled "The Paradox of Statutory Rape," another troubling scenario has been suggested: that an adult rape victim of an underage attacker could be liable for rape under statutory-rape laws.[178] The authors argue that conduct by an adult rape victim of an underage attacker will often satisfy the literal elements of statutory rape and that the available defenses in many

---

[176] *Elton*, 680 P.2d at 732 (referring to possibility that a youth will "seek[] to abuse the criminal law for his or her own sensual indulgences or for even more insidious purposes, such as blackmail").

[177] *See Blackwell v. State*, 2013 Tex. App. LEXIS 12606, *1-4 (Tex. App.–Houston [1ˢᵗ Dist.] October 10, 2013, pet. ref'd) (not designated for publication) (19-year-old male had sex with a 15-year-old female he met at a university party; he assumed that the girl was an adult because she had represented herself to be a university student; he was later informed that girl had an abortion and girl's stepfather threatened to involve the police and demanded $3000 to pay for the cost of the procedure); *Roberts v. State*, 278 S.W.3d 778 (Tex. App.–San Antonio 2008, pet. ref'd) (husband blackmailing four men with whom his wife had affairs); *Beasley v. State*, 2005 Tex. App. LEXIS 9334, *2 & n.2 (Tex. App.–Houston [1ˢᵗ Dist.] November 10, 2005, pet. ref'd) (not designated for publication) (tape recording of grandfather who threatened that his granddaughter would press charges of statutory rape if defendant, a jockey, chose to participate in that night's horse race); *Commonwealth v. Kean*, 382 Pa. Super. 587, 591, 556 A.2d 374, 376 (1989), *appeal denied*, 525 Pa. 596, 575 A.2d 563 (1990) ("Eventually, relations between the juveniles and the appellants took a turn for the worse. Alan and Steve borrowed the Keans' car without their permission and then became concerned that the Keans might notify the police. Alan and Steve were also afraid that Lucile Kean might falsely claim that the boys had forced her to participate in their sexual activities. Sometime during the summer of 1986, the boys decided to videotape one of their sexual encounters with the Keans. In this way, they hoped to gather evidence that Mrs. Kean's participation was consensual. They also reasoned that they could use the tape to blackmail the Keans into not reporting the unauthorized use of their vehicle.").

[178] *See* Russell L. Christopher and Kathryn H. Christopher, *The Paradox of Statutory Rape*, 87 Ind. L.J. 505, 506 & *passim* (Spring 2012).

jurisdictions are insufficient to immunize the adult victim from criminal liability.[179]  As one illustration, the authors discuss the facts of *Henyard v. State*,[180] in which an adult woman was raped at gunpoint by two males, Henyard and a fourteen-year-old.[181]  Although the woman was the victim in that case, the authors contended that the woman's submission to the underage attacker literally satisfied the elements of the crime of statutory rape.[182]

In another illustration, the authors point to *Garnett v. State*, a Maryland case in which the defendant was mentally retarded.[183]  In that case, Raymond Garnett, a twenty-year-old mentally retarded man with an I.Q. of fifty-two, who interacted socially at the level of age eleven or twelve, had sex with a thirteen-year-old girl of normal intelligence.[184]  There was evidence that the girl invited him up to her room through an open window and told him that she was sixteen.[185]  The authors of "The Paradox of Statutory Rape" point out that, under traditional rape law, Garnett could have been considered the victim because of his mental disability, and the thirteen-year-old could have been seen as the rapist.[186]  The role reversal that results from "the paradox of statutory rape"

---

[179]  *Id.*, *passim*.

[180]  689 So. 2d 239 (Fla. 1997).

[181]  Christopher at 506-07; *Henyard*, 689 So. 2d at 242-43.

[182]  Christopher at 507.

[183]  *Id.* at 510.

[184]  *Garnett*, 332 Md. at 574, 577, 632 A.2d at 798, 800.

[185]  *Id.* at 577, 632 A.2d at 800.

[186]  Christopher at 511 & n.53 (also quoting Professor Catherine Carpenter as observing that "students who read *Garnett* in my first year Criminal Law class often view Raymond as the victim." Catherine L. Carpenter, *The Constitutionality of Strict Liability in Sex Offender Registration Laws*, 86 B.U. L. Rev. 295, 318 n.106 (2006)).

may be more apparent if we consider a hypothetical fact situation in which an underage boy rapes a mentally retarded adult woman. Under a strict-liability regime, she would be the rapist and he the victim.

Imposing criminal liability on the rape victim simply because the attacker was underage would turn criminal law on its head. The possible existence of such a scenario under a rigorous strict-liability regime poses serious due-process concerns.[187] It may be that various defenses available in Texas—duress, necessity, and insanity[188]—would provide protection from criminal liability to any adult who is raped by an underage attacker. But the fact that we may need such defenses to perform that function points to the flaws of a rigorous strict-liability regime that ignores completely an actor's lack of actual blameworthiness.

The *Garnett* case is a real-world example that involves the mistake-of-age issue. The argument in that case was that the defendant was entitled to assert a defense of mistake of age because he thought the child was sixteen.[189] He was not entitled to such a defense under Maryland law.[190] Nor would *Lawrence* help him, under the principles that I propose today, because he believed the child to be under the age of eighteen. But the facts in Garnett's case suggest a related, though different, question of whether harsh punishment may be imposed upon a person who lacks mental culpability due to a mental disability. Although Maryland's high court upheld Raymond Garnett's

---

[187] The potential for this scenario exists because, while the absence of consent by the complainant is an element of ordinary rape, the absence of consent by the defendant is not a defense, *per se*, to statutory rape.

[188] *See* TEX. PENAL CODE §§ 8.01, 8.05, 9.22.

[189] *Garnett*, 332 Md. at 577, 632 A.2d at 800.

[190] *Id.* at 588, 632 A.2d at 805.

conviction, it acknowledged that "it is uncertain to what extent Raymond's intellectual and social retardation may have impaired his ability to comprehend imperatives of sexual morality in any case."[191] Nevertheless, the court felt that its hands were tied, concluding, "extraordinary cases, like Raymond, will rely upon the tempering discretion of the trial court at sentencing."[192] How to handle child sex cases in which the defendant is a mentally retarded individual is not before us today, but such a scenario presents potentially serious due-process concerns that reinforce my conclusion that due process has a role to play in ensuring that the defendant possesses at least a minimal level of mental culpability for such a serious crime.

Based upon the above discussion, I conclude that a scheme of rigorous strict liability for child sex offenses is not narrowly tailored to serve the State's compelling interest in protecting children. Consequently, I would hold that, absent the availability of a mistake-of-age defense, child-sex-offense laws in Texas are unconstitutional as applied to an individual who demonstrates to the finder of fact by a preponderance of the evidence that he reasonably believed, after exercising appropriate diligence,[193] that his sexual partner was at least eighteen years old, so long as the individual's conduct would otherwise constitute protected activity under *Lawrence*.[194]

---

[191] *Id.* at 582, 632 A.2d at 802.

[192] *Id.*

[193] I will discuss that type of diligence in further detail below.

[194] Judge Alcala's concurring opinion contends that this Court must "abide by Supreme Court precedent and Texas law as written, rather than legislate from the bench." But the conclusion that I reach today flows logically and inexorably from the Supreme Court's holdings in *Lambert* and *Lawrence* and from the centuries-old notion, articulated in a number of Supreme Court cases, that heavy criminal punishment should not be imposed on someone who lacks even the most minimal sort of mental culpability for the crime.

## IV. REMEDY

The procedural component of the Due Process Clause requires that a defendant be afforded the opportunity to demonstrate that the statute is indeed unconstitutional as to him.[195] For that to occur, the defendant must be given the opportunity to offer evidence on the matter and, if the evidence raises the issue, to have a reasonable-mistake-of-age defense submitted to the finder of fact. The Penal Code does not contain a mistake-of-age defense, but courts are empowered to craft one to satisfy the demands of the Constitution.[196] I therefore address the content of that defense and the circumstances under which such a defense should be submitted. The following are the elements of a constitutionally required mistake-of-age defense:

> At the time of his conduct:
>
> (1) the defendant actually believed that the complainant was eighteen years of age or older, and the defendant was unaware of any substantial risk that the complainant was under the age of eighteen,
>
> (2) this belief and the lack of awareness was reasonable,
>
> (3) this actual, reasonable belief was based upon the exercise of diligence that a reasonable adult who contemplated sexual relations would exercise, and
>
> (4) but for the complainant's age, the defendant's conduct would constitute constitutionally protected consensual activity.

With respect to element (3), a defendant's exercise of diligence would not necessarily need to be

---

[195] *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (right, rooted in part in due process, to present a defense); *Crane v. Kentucky.*, 476 U.S. 683, 687-91 (1986) ("We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard.").

[196] *See State v. McPherson*, 851 S.W.2d 846, 850 (Tex. Crim. App. 1992) (A trial court has the authority to submit a non-statutory mitigation issue when the statute does not provide for one, to satisfy the demands of the Constitution.).

based upon affirmative conduct on his part. The complainant might voluntarily supply the information needed, or the circumstances under which the defendant encounters the complainant might strongly suggest that the complainant is an adult.[197] But a reasonable belief that the complainant is an adult would not ordinarily be enough to warrant a mistake-of-age instruction if it is based upon mere fleeting or casual contact. A defendant would fail to meet element (4) if he hired the complainant as a prostitute or if his conduct would constitute a crime even if the complainant were an adult (*e.g.*, forcible rape or indecent exposure).[198]

As with all defenses, a defendant would be entitled to submission of this mistake-of-age defense only "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true."[199] This is also known as making a *prima facie* case with respect to each element of the defense.[200] I would apply the usual analysis with the following caveats: With respect to element (2), a defendant's *prima facie* case would fail if the evidence of the complainant's appearance indisputably shows that the defendant could not have reasonably mistaken the complainant for an adult.[201] With respect to element (4), a defendant would make a *prima facie* showing by introducing evidence that the complainant actually consented. However, the State could negate such a showing on element (4) by

---

[197]  *See* Loewy at 80-81 (hypothetical involving an underage person who is a college sophomore).

[198]  This is not necessarily an exclusive list of situations that fail to meet element (4).

[199]  *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007).

[200]  *Id.* at 657.

[201]  *Elton*, 680 P.2d at 732 ("Clearly the physical appearance of the victim may be persuasive against a defendant. The physical appearance of a very young girl would, at least in some cases, negate any affirmative misrepresentation she might make.").

providing undisputed evidence that the defendant's conduct, even if consensual, would not be constitutionally protected (for some other reason).

I reiterate that this mistake-of-age defense would be an *affirmative* defense, which means that the defendant would shoulder both the burden of producing evidence and the burden of persuading the finder of fact.[202] The defendant's burden of persuasion would be by a preponderance of the evidence.[203] The constitutionally required mistake-of-age defense should not be confused with the statutory mistake-of-fact defense. The latter is a "defense," rather than an affirmative defense,[204] and there is some difference in the elements of the two defenses.[205]

## V. DISPOSITION

In the present case, the court of appeals addressed the merits of appellant's constitutional complaints by holding, as a general matter, that the aggravated-sexual-assault statute's "lack of a mistake-in-fact defense does not offend notions of Due Process."[206] The court of appeals did not address a host of issues that may come into play after a holding that due process requires the submission of a mistake-of-age defense in an appropriate case. It did not consider the issue of procedural default, address whether the evidence raised the defense, or conduct a harm analysis.[207] Nor did the court consider whether evidence was excluded that would have been relevant to the

---

[202] See TEX. PENAL CODE § 2.04.

[203] *Id.*, § 2.04(d).

[204] *See id.* §§ 2.03, 8.02.

[205] *See Celis*, 416 S.W.3d at 430-31 (holding that statutory mistake-of-fact defense is available only to negate a culpable mental state prescribed for the offense).

[206] *See Fleming v. State*, 376 S.W.3d 854, 858-62 (Tex. App.–Fort Worth 2012, pet. granted).

[207] *See id.*

defense, and it did not consider any attendant preservation and harm analyses associated with any

such exclusion.[208]  It did not need to, because its holding, if it had been correct, would have properly

disposed of the case.[209]  I would hold that it is appropriate for the court of appeals to address these

issues in the first instance on remand.[210]

        With these comments, I respectfully dissent.

Filed: June 18, 2014
Publish

---

[208]  *See id.*

[209]  *State v. Plambeck*, 182 S.W.3d 365, 367 n.10 (Tex. Crim. App. 2005).

[210]  *See Benavidez v. State*, 323 S.W.3d 179, 183 n.19 (Tex. Crim. App. 2010).  The Court's opinion considers the facts of the present case, saying, "It would be unconscionable for us to allow a 25 year-old-man who was having sex with a 13-year-old child" to claim he was reasonably mistaken about whether he was having sex with an adult.  And Judge Alcala's concurring opinion addresses whether, if a mistake-of-age defense were available, appellant in fact acted reasonably. But the court of appeals did not decide whether appellant actually acted reasonably.  That court decided only that a mistake-of-age defense was never available under the statute.  Appellant's petition for discretionary review challenges only that decision and his brief focuses only on the availability of a mistake-of-age defense as a general matter.  This Court has never placed appellant on notice that the specific facts of his case would be an issue on discretionary review.  We should not reach out to decide such an issue without at least affording him the opportunity to weigh in on the matter.  *See Pena v. State*, 191 S.W.3d 133 (Tex. Crim. App. 2006).  If we were to recognize a mistake-of-age defense, the court of appeals should address its applicability to appellant in the first instance.  *See Hudson v. State*, 394 S.W.3d 522, 525 n.16 (Tex. Crim. App. 2013).