**Opinion issued November 5, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-23-00152-CR**

**01-23-00153-CR**

———————————

**EX PARTE ISAAC HUMPHREY, Appellant**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1785410 and 1785411**

---

**MEMORANDUM OPINION**

Appellant Isaac Humphrey appeals from two trial court orders denying his pretrial applications for writ of habeas corpus that challenges the constitutionality of the statutes under which he was charged. *See* TEX. PENAL CODE §§ 43.05(a)(2), 20A.02(a)(7)(E). In trial court cause number 1785410, Humphrey was charged with the offense of knowingly compelling a child to commit prostitution. *See id.*

§ 43.05(a)(2). In trial court cause 1785411, Humphrey was charged with the offense of trafficking a child and knowingly causing the trafficked child to engage in prostitution. *See id.* § 20A.02(a)(7)(E). We affirm.

## Procedural history

After appellant was indicted in these two causes, he filed pretrial applications for writs of habeas corpus, arguing that the two statutes with which he was charged were facially unconstitutional because they were overbroad and vague and lacked scienter concerning the child's age.[1] Humphrey also argued that the statutes were unconstitutional and inherently defective because a child younger than under the age of 18 cannot legally commit the offense of prostitution. The trial court denied the applications and Humphrey filed these appeals.

## Analysis

### Standard of review

The Texas Court of Criminal Appeals has stated that "[t]here are two types of First Amendment facial challenges: claims that a statute (or part of a statute) is an

---

[1] Appellant's briefs in these two appeals were due on July 10, 2023. The Court granted appellant's motions for extension until August 1, 2023, but no briefs were filed. Accordingly, the Court submitted the appeals on the record and we review the arguments presented in the applications for writ of habeas corpus filed in the trial court, the State's response, and appellant's replies. *See Scott v. State*, 167 S.W.3d 62, 65 (Tex. App.—Waco 2005, pet. ref'd) (citing to *Lott v. State*, 874 S.W.2d 687, 688 (Tex. Crim. App. 1994) (where appellant did not file brief, court submitted case without benefit of briefs and, in the interest of justice, reviewed entire record)).

impermissible restriction on protected speech or conduct and claims that a statute is overbroad because it violates the rights of too many third parties (the 'overbreadth' doctrine)." *Ex parte Lowry*, 693 S.W.3d 388, 405 (Tex. Crim. App. 2024). "Whether a statute is facially unconstitutional is a question of law that we review de novo." *See Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A facial challenge is an attack on the statute rather than the application of the statute to the defendant. *See Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

To successfully establish a facial challenge as an impermissible restriction on protected speech, the appellant must show that the statute would not be valid under any circumstance, or the statute lacks any "plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 472 (2010). "This type of facial challenge is available when a statute restricts or punishes speech based upon its content." *Ex parte Duckens*, 654 S.W.3d 571, 575 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

A restriction on speech is content-based if it "distinguishes 'favored speech from disfavored speech on the basis of the ideas or views expressed.'" *Ex parte Thompson*, 442 S.W.3d 325, 345 (Tex. Crim. App. 2014) (quoting *Turner Broadcasting Sys., Inc. v. Fed. Comm. Comm'n*, 512 U.S. 622, 643 (1994)). "If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based." *Thompson*, 442 S.W.3d at 345. "Such a regulation may be upheld only if it is necessary to serve a compelling

state interest and employs the least speech-restrictive means to achieve its goal." *State v. Stubbs*, 502 S.W.3d 218, 224 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). A content-based regulation is presumed invalid, and the State bears the burden of rebutting this presumption. *See Lo*, 424 S.W.3d at 15. A statute that regulates speech based on its content, or is content-based, is subject to the most exacting or strict scrutiny. *See id.*

A law that "confers benefits or imposes burdens on speech without reference to the ideas or views expressed [is] in most instances content neutral." *Turner*, 512 U.S. at 643. This type of regulation is accorded intermediate scrutiny and will be upheld if it "promotes a significant governmental interest and does not burden substantially more speech than necessary to further that interest." *Stubbs*, 502 S.W.3d at 224–25.

### 1. Speech involved in these statutes is unprotected by the First Amendment

In challenging these two statutes, Humphrey argues both that the statutes are facially unconstitutional because they are impermissible restrictions on protected speech or conduct and that the statutes are overbroad and vague. We first consider whether Humphrey's claims are cognizable in a pretrial application for a writ of habeas corpus. The Court of Criminal Appeals has stated that only certain issues may be raised by pretrial writ of habeas corpus:

4

Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy. This remedy is reserved "for situations in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review." Except when double jeopardy is involved, pretrial habeas is not available when the question presented, even if resolved in defendant's favor, would not result in immediate release.

*Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016) (citations omitted). A facial challenge to the constitutionality of a statute is cognizable in a pretrial application for writ of habeas corpus "because the charging instrument is void if there is no valid statute." *See Lowry*, 693 S.W.3d at 404. Thus, we may consider Humphrey's complaints that the statutes are impermissible restrictions on protected speech.

To determine what expressive conduct the statutes cover, we must begin with the plain text of the statutes. *See U.S. v. Williams*, 553 U.S. 285, 293 (2008). Section 43.05(a)(2) prohibits a person from knowingly "caus[ing] by any means a child younger than 18 years to commit prostitution, regardless of whether the actor knows the age of the child at the time of the offense." TEX. PENAL CODE § 43.05(a)(2).

In the second trial court cause, Humphrey was charged with violating section 20A.02(a)(7)(E), which prohibits a person from knowingly trafficking "a child or disabled individual and by any means causes the trafficked child or disabled

5

individual to engage in, or become the victim of conduct prohibited by" . . . "Section 43.05 (compelling prostitution)." TEX. PENAL CODE § 20A.02(a)(7)(E).[2]

A child is defined as a "person younger than 18 years of age." TEX. PENAL CODE § 20A.01(1). "'Traffic' means to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PENAL CODE § 20A.01(4). The offense of prostitution is committed when a person "knowingly offers or agrees to receive a fee from another to engage in sexual conduct." TEX. PENAL CODE § 43.02(a).

Humphrey first argues that the two statutes are content-based restrictions subject to strict scrutiny because they prohibit conduct "by any means" that results in a minor committing prostitution. Humphrey argues that these statutes are silent as to time, place, and manner, and are necessarily content-based restrictions.

"Generally, a law is considered to be content based if it distinguishes 'favored speech from disfavored speech on the basis of the ideas or views expressed.'" *Thompson*, 442 S.W.3d at 345 (quoting *Turner Broadcasting*, 512 U.S. at 643). "In determining whether a regulation is content-based or content-neutral, we look to the purpose behind the regulation . . . ." *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001).

---

[2] Section 20A.02(a) prohibits a person from causing a trafficked child to engage in conduct prohibited by a number of different criminal statutes. *See* TEX. PENAL CODE § 20A.02(a). Subsection (7)(E) prohibits causing a trafficked child to engage in conduct prohibited by section 43.02, concerning prostitution. *See* TEX. PENAL CODE ANN. § 43.02.

Typically, the regulation will be content-neutral if the regulation "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The State labels these statutes as "result-of-conduct" offenses, meaning that a "person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE § 6.03(b).[3] "A person is criminally responsible for the result of the conduct if the result would not have occurred 'but for' the actor's conduct . . . ." *Patterson v. State*, 46 S.W.3d 294, 301 (Tex. App.—Fort Worth 2001, no pet.) (citing TEX. PENAL CODE § 6.04).

The State reasons that section 43.05(a)(2) primarily applies to non-expressive conduct. Such conduct was examined in *Waggoner v. State*, in which the court addressed the meaning of "by any means" language in section 43.05(a)(2). *See* 897

---

[3]     The Court of Criminal Appeals has distinguished several types of criminal offenses. "'[R]esult-of-conduct' offenses concern the product of certain conduct." *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An example of a result-of-conduct offense is murder because the offense punishes the intentional killing of another regardless of the manner. *See id.* Another type of offense is a "nature-of-conduct" offense, which punishes the conduct regardless of any result that may occur. *See id.* An example of this is aggravated sexual assault, in which the offense punished is the specific conduct of which there can be several different types. *See id.* at n.20. Finally, there are "circumstances of conduct" offenses which "prohibit otherwise innocent behavior that becomes criminal only under specific circumstances." *See id.* An example of this type of offense is unlawful discharge of a weapon. *See id.*

7

S.W.2d 510, 512 (Tex. App.—Austin 1995, no pet.). Although Waggoner did not raise a constitutional argument, he argued that his conduct did not cause the complainant to commit prostitution because there was no proof that he forced, threatened, or acted violently toward her. *See id.*

The court observed that Texas law offered little guidance on the meaning of causing a minor to commit prostitution "by any means" and looked to an Oregon case construing a similar statute. *See id.* The Oregon court held that the purpose of the statute was to "provide maximum protection" from the harmful effects of prostitution and was intended to prohibit exploitative conduct by influencing, persuading, or prevailing upon the minor that resulted in the minor engaging in prostitution. *See id.* (citing *State v. Wood*, 579 P.2d 294, 296 (Ore. App. 1978)). Because Waggoner had provided the minor the opportunity to engage in prostitution, provided the contact and the meeting, negotiated the price, gave the minor a condom and a cell phone, drove her to the location, and gave the security guard of the location the code to enable the minor to enter, the court found these actions fell within the requirement of compelling the minor "by any means." *Waggoner*, 897 S.W.3d at 512. Additionally, the minor testified that the appellant told her she would receive $1,000 per hour, and that she was afraid she would be harmed by the appellant if she did not get in the car with him and engage in sex with a stranger for money. *See id.* Thus, the Austin Court of Appeals held that the State was not limited to proving

8

force, threat, or violence, but could show that the defendant compelled the minor to commit prostitution by a variety of actions and threats and these included both expressive and non-expressive conduct. *See id.*

The kinds of conduct discussed in *Waggoner* indicate that much of the conduct prohibited by section 43.05(a)(2) is non-expressive and therefore, not protected by the First Amendment. Courts considering the constitutionality of the statute concerning online solicitation of minors have held that this offense primarily involves non-expressive conduct, but it may also involve speech. *See, e.g., Ex parte Chanagond*, No. 05-23-00029-CR, 2023 WL 3963993, at *2 (Tex. App.—Dallas June 13, 2023, pet. ref'd). Moreover, the Dallas court held, to the extent online solicitation of minors to engage in sexual conduct involves speech, that speech is not protected by the First Amendment. *See id.* In *Ex parte Lo*, the Court of Criminal Appeals held:

> Section 33.021 of the Texas Penal Code is titled "Online Solicitation of a Minor." It includes subsection (c)—a provision that prohibits and punishes an actor who uses electronic communications to "solicit" a minor, "to meet another person, including the actor, with the intent that the minor will engage in "certain sexual behavior." Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because "offers to engage in illegal transactions [such as sexual assault of a minor] are categorically excluded from First Amendment protection."

424 S.W.3d at 16 (citations omitted).

In a subsequent case, the Court of Criminal Appeals quoted prior holdings concerning the lack of First Amendment protection accorded to speech integral to criminal conduct involving minors and illegal sexual activity:

> "Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because offers to engage in illegal transactions such as sexual assault of a minor are categorically excluded from First Amendment protection." As we suggested in *Lo*, other courts have held that the First Amendment does not apply to speech that attempts to induce a child to engage in illegal sexual activity: A person "simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts." "The inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection." "[S]peech used to further the sexual exploitation of children does not enjoy constitutional protection." "Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime." "The common thread in cases involving First Amendment challenges to luring statutes is that freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute."

*Ex parte Ingram*, 533 S.W.3d 887, 898 (Tex. Crim. App. 2017) (citations omitted).

The term "solicit" is not defined by the online solicitation statute, but the usual meaning of that word in the context of sexual or other potentially criminal acts is "to try to obtain (something) by usually urgent requests or pleas," "to offer to engage in sex acts and especially sexual intercourse with (someone) in exchange for pay", or "to entice or lure especially into something unlawful or wrong." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/solicit (last visited October 29, 2024). Clearly, the offense of online solicitation of a minor involves

speech, but the courts have held that, because the speech involved in this offense constitutes an offer to engage in an illegal transaction, it is unprotected by the First Amendment. *See Ingram*, 533 S.W.3d at 898.

Section 43.05(a)(2) involves non-expressive conduct and expressive conduct. The type of speech that could cause a child to engage in or become the victim of prostitution, while not necessarily an offer to engage in sex, as with online solicitation of minors, can constitute threats, deception, or coercion of a minor to engage in an illegal activity—prostitution, or to engage in sexual conduct for a fee.

Like the holdings concerning online solicitation of minors, the State argues that, to the extent sections 43.05(a)(2) and 20A.02(a)(7)(E) involve speech, that speech is not protected by the First Amendment because it is speech integral to criminal conduct. The First Amendment has always permitted content-based restrictions on speech in a few limited areas, including obscenity, fraud, incitement, and "speech integral to criminal conduct." *Stevens*, 559 U.S. at 468 (citing to *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) for authority concerning speech integral to criminal conduct). The Court explained that these exceptions are not based on a decision that some speech lacks social value but that "'the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake, that no process of case-by-case adjudication is required,' because 'the

11

balance of competing interests is clearly struck.'" *Stevens*, 559 U.S. at 470 (quoting

*New York v. Ferber*, 458 U.S. 747, 763–64 (1982)).

The State asserts that any speech used to induce a child to commit or engage in prostitution is not afforded the protection of the First Amendment and is not entitled to heightened scrutiny and protection. As the Texas Supreme Court has stated:

> Children are the victims, not the perpetrators, of child prostitution. Children do not freely choose a life of prostitution, and experts have described in detail the extent to which they are manipulated and controlled by their exploiters.

*In re B.W.*, 313 S.W.3d 818, 826 (Tex. 2010) (citations omitted). *Cf. Ex parte Barrett*, 608 S.W.3d 80, 92 (Tex. App.—Dallas 2020, pet. ref'd) (holding that speech used to initiate, carry out, or commit child trafficking is merely incidental to criminal conduct, does not violate defendant's First Amendment rights, and "it is error for courts to apply heightened levels of scrutiny and protection.").

In discussing speech regulated by the statute criminalizing the trafficking of children by forced labor or services, the Dallas court stated:

> Most criminal activity involves some form of communication. However, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." If one is "coercing," "enticing" or "recruiting" a child "by any means" knowing and intending that the child engage in forced labor or services, it is difficult to imagine a substantial number of situations where such speech would not be integral to criminal conduct.

12

*Barrett*, 608 S.W.3d at 95–96 (citations omitted). This reasoning is equally applicable to the expressive conduct used to coerce, entice, or recruit a minor or trafficked child to commit or engage in prostitution.

Humphrey disagrees, arguing that modern legal approaches demand further scrutiny of speech traditionally held to be unprotected. In support of this assertion, Humphrey cites to *U.S. v. Alvarez*, 567 U.S. 709 (2012). In *Alvarez*, the appellant was indicted under the Stolen Valor Act of 2005 for lying about being awarded a Congressional Medal of Honor. *See id.* at 713. Although the government argued that these false statements were unprotected by the First Amendment, the Court disagreed. *See id.* at 716, 719. The Court recognized that certain "historic and traditional categories [of expression]" have been permitted despite being content-based restrictions on speech, which can include "speech integral to criminal conduct" and certain types of false statements. *See id.* at 717–18. But the Court did not hold, as Humphrey suggests, that all types of traditionally unprotected speech require further scrutiny. Rather, the Court only required further scrutiny of the new category of unprotected speech sought by the government in the *Alvarez* case. *Id.* at 722.

Because the *Alvarez* holding concerned false statements that did not fall within the traditional categories, we are unpersuaded that it extends to other types of speech traditionally held to be unprotected by the First Amendment. Therefore, we

find no merit in Humphrey's argument that speech integral to criminal conduct requires further scrutiny.

The speech involved in compelling a child to commit prostitution or in causing a trafficked child to engage in prostitution is integral to the criminal conduct proscribed by these statutes, and we hold that the speech regulated by sections 43.05(a)(2) and 20A.02(a)(7)(E) is not protected by the First Amendment.

### 2. Sections 43.05 and 20A.02(a)(7)(E) are not unconstitutionally overbroad

Humphrey next contends that sections 43.05(a)(2) and 20A.02(a)(7)(E) are facially unconstitutional because they are overbroad. Both statutes provide that a defendant will commit an offense if he either knowingly compels a minor to commit prostitution "by any means" or knowingly traffics a child and causes that child, "by any means," to engage in prostitution. *See* TEX. PENAL CODE §§ 43.05(a)(2), 20A.02(a)(7)(E). Humphrey asserts that this "by any means" language covers a broad range of speech and, thus, the statutes are overbroad.

"Under the First Amendment's 'overbreadth doctrine,' a statute may be declared unconstitutional on its face, even if it might have some legitimate applications." *Jones v. State*, No. 01-22-00800-CR, 2024 WL 3363047, at *3 (Tex. App.—Houston [1st Dist.] July 11, 2024, no pet.). The party challenging the statute must show that, based on the text of the statute and "actual fact," that there are a substantial number of instances in which the statute cannot be constitutionally

14

applied. *See id.* To invalidate a statute as overbroad, the appellant must show that "the statute covers a substantial amount of protected speech, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* Thus, "[a] statute is likely to be found overbroad if the criminal prohibition it creates is of 'alarming breadth.'" *Thompson*, 442 S.W.3d at 350. "The overbreadth doctrine is 'strong medicine' to be employed with hesitation and only as a last resort." *Ex parte Lee*, 617 S.W.3d 154, 163 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (quoting *Thompson*, 442 S.W.3d at 349).

Because we have held that these two statutes do not involve constitutionally protected speech, they do not involve substantial restrictions on protected speech. But even if they did reach some protected speech, the restrictions reach a minimal amount of speech. The Fourteenth Court of Appeals addressed a similar statute concerning exploitation of children in which the statute provided that a person commits an offense if "knowing the character and content thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance." *Duckens*, 654 S.W.3d at 574 (discussing Penal Code section 43.25). The Court held that section 43.25 did not reach a substantial amount of constitutionally protected speech, "judged in relation to the statute's plainly legitimate sweep." *See id.* at 578. Similarly, the Dallas Court of Appeals upheld the constitutionality of section 43.25, noting that the offense did not need to

involve speech at all, and to the extent it regulated expressive conduct, it concerned speech generated in connection with an illegal act, such as indecency with a child, sexual assault of a child, online solicitation of a minor, criminal solicitation of a minor, trafficking a child to participate in sexual offenses, and prostitution offenses. *See Ex parte Fujisaka*, 472 S.W.3d 792, 797–98 (Tex. App.—Dallas 2015, pet. ref'd).

To show that these two statutes are overbroad, Humphrey offers several examples in which he alleges that speech associated with purportedly lawful activity might be penalized. In one example, Humphrey argues that a father helping his daughter set up a social media profile, adding local boys to the site as friends, and buying her a cell phone would fit within the requirement of knowingly causing the daughter to commit prostitution. This example consists primarily of non-expressive conduct, but to the extent it involves speech in assisting with creation of a social media profile and obtaining the daughter a cell phone, this example fails to show how the father's speech or conduct results in the prohibited conduct—knowingly causing the daughter to commit or engage in prostitution. As discussed previously, the inclusion of the requirement of knowingly causing the child to engage in or commit prostitution limits the reach of the statutes.

Humphrey's other examples suffer from the same deficiency. One example involves a father talking to his daughter about the importance of using condoms and

16

permitting her to attend a concert with a teenage boy. Another example concerns a restaurant manager guiding a lecherous restaurant customer to sit in the section of a waitress under the age of 18. In these examples, the actor's conduct or speech would only be prohibited by the statutes if it knowingly caused the minor to commit or engage in prostitution. Thus, if the actors in the examples knowingly induced or caused the minor child or minor employee to commit prostitution, this conduct would be illegal and would not enjoy the protection of the First Amendment. *Cf. Fujisaka*, 472 S.W.3d at 799 ("Accordingly, regardless of whether the defendant is a parent, the only applications of [the statute] that could conceivably pose a danger of regulating or chilling constitutionally protected speech involve persons 'authorizing' or 'inducing' a [minor] to engage in sexual conduct or a sexual performance."). By imposing a scienter requirement, sections 43.05(a)(2) and 20A.02(a)(7)(E) exclude the possibility that innocent acts or words could be construed as causing a child to engage in prostitution. *See Barrett*, 608 S.W.3d at 96.

Humphrey's examples fail to persuade us that the statutes at issue in these cases reach a substantial amount of constitutionally protected speech, judged in relation to its plainly legitimate sweep, and thus, we hold that sections 43.05(a)(2) and 20A.02(a)(7)(E) are not unconstitutionally overbroad.

### 3. Sections 43.05(a)(2) and 20A.02(a)(7)(E) are not constitutionally vague

Humphrey also asserts that these statutes' use of the phrase "by any means" renders them unconstitutionally vague. When such a challenge is raised, "we presume that the statute is constitutional, which means that the burden rests on the challenger to establish its unconstitutionality." *State v. Zuniga*, 656 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd). Traditionally, a challenger has had the burden to show that the statute is "impermissibly vague in all of its applications," which is a heavy burden. *Id.* But when the challenge concerns the First Amendment, the Supreme Court has not required a showing that the statute is impermissibly vague in all applications. *See U.S. v. Williams*, 553 U.S. 285, 304 (2008).

A criminal law is unconstitutionally vague if it is not "sufficiently clear (1) to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) to establish determinate guidelines for law enforcement." *State v. Doyal*, 589 S.W.3d 136, 146 (Tex. Crim. App. 2019). If the law implicates First Amendment protection, "it must also be sufficiently definite to avoid chilling protected expression." *Id.* Scienter requirements may alleviate vagueness concerns. *See id.* "What renders a statute vague is the 'indeterminacy of precisely what' the prohibited conduct is." *Id.*

Here, the statutes are not vague as to the result, which is causing a minor to commit or engage in prostitution. Although Humphrey asserts that the conduct leading to that result is vague because the two statutes permit conduct "by any means," the requirement of knowing conduct alleviates any vagueness concerns. *See McFadden v. U.S.*, 576 U.S. 186, 197 (2015). When the scope of the prohibited conduct is narrowed by the scienter, and the scienter requirement limits prosecutorial discretion, the scienter requirement alleviates concerns about vagueness. *See id.*

Sections 43.05(a)(2) and 20A.02(a)(7)(E) both require the actor to knowingly cause a minor to commit or engage in prostitution. *See* TEX. PENAL CODE §§ 43.05(a)(2), 20A.02(a)(7)(E). Thus, regardless of the means by which the actor chooses to cause the minor to commit prostitution, the scienter requirement of acting knowingly to reach the prohibited result alleviates any vagueness concerns. Accordingly, we find no merit in Humphrey's argument concerning vagueness.

**4.  Sections 43.04(a)(2) and 20A.02(a)(7)(E) are not facially unconstitutional because they lack scienter about the minor's age**

Humphrey next argues that the statutes are overbroad because they do not require the defendant to know that the complainant is a minor.[4] Citing to *U.S. v. X-*

---

[4]  The former affirmative defense for many sexual offenses involving minors—having a reasonable belief that the child was 18 years of age or older—no longer exists. *See Fleming v. State*, 455 S.W.3d 577, 601 n.100 (Tex. Crim. App. 2014) (Keller, P.J., joined by Price and Johnson, Justices, dissenting) (footnote discussing defenses to child sex-offense statutes).

*Citement Video, Inc.*, 513 U.S. 64 (1994), Humphrey asserts that this lack of scienter about the complainant's age raises a constitutional problem for both statutes.

In *X-Citement*, the defendant was convicted under the Protection of Children Against Sexual Exploitation Act of 1977, which prohibited "the interstate transportation, shipping, receipt, distribution, or reproduction of visual depictions of minors engaged in sexually explicit conduct." *Id.* at 65–66. The statute stated it was illegal to knowingly transport or ship in interstate or foreign commerce "by any means including by computer or mails," any visual depiction of a minor engaging in sexually explicit conduct. *See id.* at 68. The Court stated that "a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts," but because of that, the Court stated it was "incumbent upon us to read the statute to eliminate those doubts so long as such a reading is not plainly contrary to the intent of Congress." *Id.* at 78. Accordingly, the Court concluded that the term "knowingly" extended "both to the explicit nature of the material and to the age of the performers." *Id.*

Unlike the *X-Citement* Court, we cannot find that the term "knowingly" applies to the age of the complainant because section 43.05 expressly states that a defendant commits the offense "regardless of whether the actor knows the age of the child at the time of the offense." *See* TEX. PENAL CODE § 43.05(a)(2). Although

20

section 20A.02(a)(7)(E) does not contain that language, we find that *X-Citement* is distinguishable and therefore, inapplicable to the statutes at issue here.

*X-Citement* concerned visual depictions of underage children, rather than interactions with actual children, and thus, the perpetrator would have fewer clues as to the child's age or maturity than a person who physically interacts with that child. *See* 513 U.S. at 72 n.2. Both under section 43.05(a)(2) and 20A.02(a)(7)(E), the perpetrator would encounter and engage with the minor in person, rather than viewing visual depictions, and thus, the risks concerning the child's age that were involved in *X-Citement* are not present here. *See Fleming v. State*, 455 S.W.3d 577, 581–82 (Tex. Crim. App. 2014) (affirming conviction for aggravated sexual assault and finding no constitutional violation in failure to require *mens rea* as to victim's age); *Scott v. State*, 36 S.W.3d 240, 242 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (upholding constitutionality of statutory rape statute despite failure to require knowledge of child victim's age because statute serves legitimate state objective of protecting children). Accordingly, we conclude that the failure to include a scienter requirement as to the complainant's age does not render the statutes unconstitutional.

### 5. Legal Impossibility

Humphrey's final argument is that a child may not legally consent to engage in sexual conduct and thus, the two statutes with which he is charged are predicated

21

on a legal impossibility. The State responds that we should refuse to consider these arguments because they are not cognizable by pretrial habeas.

In his applications for habeas relief, Humphrey claimed that, because children under the age of 17 cannot legally consent to sex, they cannot commit prostitution, and therefore, the elements of these two crimes that concern a child committing prostitution are a legal impossibility. The State asserts that children younger than 14 years cannot be charged with prostitution because they cannot legally consent to sex. *See In re B.W.*, 313 S.W.3d 818, 820 (Tex. 2010) (stating that Texas follows majority of states with two-step scheme differentiating between sexual relations with a younger child and sexual relations with an older teen based on rationale that younger children lack capacity to appreciate significance of consequences of agreeing to sex). Thus, the State argues that, even if Humphrey's argument were correct, it would apply only to cases involving victims younger than 14 years of age and nothing in the record demonstrates that the complainants in these cases are younger than 14 years of age.[5]

The records in these two appeals include the indictments, but these do not state the complainant's age. The indictments in these two cases state that the

---

[5] Although appellant filed a reply to the State's responses to the application for writ of habeas corpus, appellant did not address the State's argument that the complaint about the complainant's age and whether these complaints were cognizable in a pretrial application for writ of habeas corpus.

complainant in each case is younger than 18 years of age.  Thus, the State asserts that resolution of Humphrey's contentions would require record development as to the complainant's age and pretrial habeas is not available when resolution of a claim requires development of a record at trial.  *See Ex parte Edwards*, 663 S.W.3d 614, 616 (Tex. Crim. App. 2022) (holding that pretrial habeas is "unavailable when the resolution of a claim may be aided by the development of a record at trial" except to test sufficiency of a charging instrument for claims involving constitutional right to avoid trial, such as double jeopardy); *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010) (holding that pretrial habeas is inappropriate for questions requiring development of record at trial).  Because a determination of the age of the complainants at the time of the alleged offenses would require a fact determination and development of a record, Humphrey's claims of legal impossibility are not cognizable by pretrial habeas and we decline to consider it.  *See Edwards*, 663 S.W.3d at 616.

## Conclusion

Because we conclude that sections 43.05(a)(2) and 20A.02(a)(7)(E) are not facially unconstitutional or constitutionally overbroad or vague, we affirm the trial court's order denying Humphrey's applications for writ of habeas corpus.

23

**PER CURIAM**

Panel consists of Chief Justice Adams and Justices Kelly and Goodman.

Do not publish. TEX. R. APP. P. 47.2(b).